Pages 1 – 30

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE EDWARD M. CHEN, JUDGE

| | |
|---|---|
| **INTRI-PLEX TECHNOLOGIES, INC**., ) | |
| ) | |
| Plaintiff, ) | |
| VS.                    ) NO. C 17–1097 EMC | |
| ) | |
| NHK INTERNATIONAL CORPORATION, ) | |
| Et al.,                 ) | |
| ) San Francisco, California | |
| Defendants.          ) | |

Monday, January 29, 2018

**TRANSCRIPT OF PROCEEDINGS**

APPEARANCES:

For Plaintiff:
                    SIMPSON THACHER & BARTLETT, LLP
                    2475 Hanover Street
                    Palo Alto, California  94304
                BY: **MICHAEL H. JOSHI, ESQ.**
                    **WYATT A. HONSE, ESQ.**

                    SIMPSON THACHER & BARTLETT, LLP
                    425 Lexington Avenue
                    NEW YORK, NEW YORK  10017
                BY: **NOAH M. LEIBOWITZ, ESQ.**

For Defendants:
                    SINGULARITY LLP
                    555 Twin Dolphin Drive.
                    Suite 610.
                    Redwood Shores, CA 94065
                BY: **FRANK L. BERNSTEIN, ESQ.**

Reported By:  **BELLE BALL, CSR 8785, CRR, RDR**
            Official Reporter, U.S. District Court

Appearances continued, next page

APPEARANCES, CONTINUED:


For Defendants:
                        SUGHRUE MION, PLL.
                        2100 Pennsylvania Avenue N.W.
                        Washington, D.C. 20037
                   BY:  **FADI NAZIH KIBLAWI,ESQ.**
                        **WILLIAM H. MANDIR, ESQ.**



**Also Present:**          **AKIRA NOJIMA**

<u>**Monday - January 29, 2018**</u>                                    <u>**11:03 a.m.**</u>

P R O C E E D I N G S

THE CLERK:  Calling Case C-17-1097, Intri-Plex versus NHK.

Counsel, please come to the podium and state your name for the record.

MR. JOSHI:  Good morning, Your Honor.  Michael Joshi for plaintiff Intri-Plex, along with my colleagues Noah Leibowitz and Wyatt Honse.

THE COURT:  Good morning, Mr. Joshi.

MR. BERNSTEIN:  Good morning, Your Honor.  Frank Bernstein from Singularity for the defendants.  With me are my colleagues William Mandir and Fadi Kiblawi from Sughrue Mion.  And also a corporate representative from NHK Spring, Mr. Akira Nojima.

THE COURT:  All right.  Thank you, counsel.

So I guess the first overarching question is whether or not the phrase in question is limiting or whether it's just preamble language that has no real effect or operative effect.

And I understand the arguments pro and con.  But let me ask the first question.  Is the -- is there any assertion that other language in the preamble can have a limiting effect?

Or do the parties agree that the rest of the words, "attachment of a suspension assembly to an actuator arm in a hard disk drive" is not limiting?

MR. JOSHI:  The plaintiffs do not contend any other part of the preamble is limiting, Your Honor.

**MR. KIBLAWI:**  Yes, defendants have the same position.  Those appear to be directed to the intended use, and do not really affect any of the disputes between the parties, the remaining language.

**THE COURT:**  I ask just, from a layperson's point of view, one of the factors you would think one would look to is whether or not this language, you know, is necessary to give meaning to the claim.  Whether it's sort of simply duplicative of the elements, et cetera.

And you know, when just looking at it, "optimize," seems to me it refers to the ratio in the equation.  "Low profile" seems to me means something low-profile enough to serve the purpose of -- for use in a hard disk drive.

"base plate," well, you know, arguably you need to know the total context of what we're talking about.  But -- well, I find it interesting.

The "hard disk drive" language, as well as, you know, the title and everything else kind of indicates, at least, what -- it gives some content to "low profile."  But in a way, if -- if a limiting affect were given to something that had to be in a suspension assembly, "base plate for attachment in a suspension assembly to an actuator arm in a hard disk drive" certainly would inform, you know, the -- someone knowledgeable in the field what we are talking about.  But if it's not, then it does put a premium on these other words, it seems to me.

**MR. JOSHI:**  That's right, Your Honor.  And one of ordinary skill in the art would be informed by these terms in the context of the patent and the specification and the prosecution history.

The problem is if you look at the body of the claims without considering the terms "low profile" and "base plate" and "optimized," then the body of the claims can relate to essentially any object with a hub and a flange having those dimensions.

And the issue and the reason particularly why "low profile" and these other terms are limiting is the equation in the claims are the result of a geometric ratio.  And so "low profile" adds a limitation to that that is not reflected in the ratio, itself.  The ratio could be scaled to kilometers.

And our brief even points out that if you change just two of the exemplary dimensions that are given in the patent as examples of the invention, you could create a base plate that was five times as tall as the low-profile base plates that are in --

**THE COURT:**  The reason why one practiced in the arts would know that's not the case is because the whole context of this is a hard disk drive.  We're not talking about something as big as this room.  We're talking about something the scale of which -- you're talking about the scale, basically.  It's driven -- "low profile" drives a scale.  You have a formula ratio.

**MR. JOSHI:**  Right.

THE COURT:  But you don't know the scale of the thing.

MR. JOSHI:  That's correct.  And that's why "low profile" and "base plate" -- right, "base plate" gives it the context that it is a component in a hard disk drive, and "low profile" gives it the context of the overall height of these parts.

And if you recall from the tutorial two weeks ago, these parts are very, very small.

THE COURT:  And the argument and the counter-argument is that if it is limiting, there's no definition to "low profile."

MR. JOSHI:  Well, so, Your Honor, the case law is very clear that you aren't required to purge ever shred of ambiguity.  We would argue that the -- one of ordinary skill in the art, reading the patent, reading the specification, in fact having exemplary dimensions down to a thousandth of a millimeter has sufficient guidance to understand what "low profile" would mean.

THE COURT:  Well, and also because it's in the context of a hard disk drive.

MR. JOSHI:  Exactly.

THE COURT:  Which is why it's kind of interesting, because the use language which you concede is not limiting in the rest of the preamble, that -- which, of course, gives it context as being part of an actuator arm and a hard disk drive, plus everything else, as you say -- well, the dependent claims has actual millimeters.  The Claim 1 doesn't say anything about scale.

**MR. JOSHI:**  That's correct.  But the patent, Column 4, Lines 1 through 18 provides exemplary dimensions.  And so one of ordinary skill in the art were to read the patent.  And the term "base plate," I think what Your Honor's getting at is "hard disk drive" is clearly an important part here because it establishes the context that we are talking about.  But "base plate," read in the context of the patent and the specification, would explain to one of ordinary skill in the art that this is a component of a hard disk drive.

We don't need "base plate" and "hard disk drive" to be limiting.  "base plate" in the context of the patent and the specification would be sufficient for one of ordinary skill in the art.

**THE COURT:**  That's true, but you have to know, to give some definition in context or meat to "low profile," you have to know you're talking about a base plate, because obviously those are the words that followed, modified "base plate."  But in the context of a hard disk drive as informed by, in the specifications, the Column 4 examples, et cetera, et cetera.

**MR. JOSHI:**  I agree.  And I think the main reasons the parties don't dispute that the rest of the preamble is not limiting is that clearly set out as sort of an intended use or purpose, and the case law is very clear that an intended use or purpose in the preamble is not limiting.

**THE COURT:**  Do you take the position that that non-limiting

intended use, though, can inform the construction of the terms that are limiting?

MR. JOSHI:  Well, that, along with the spec and everything informs the -- the person of ordinary skill in the art will read the claims in the context of the rest of the claim, the specification, and the prosecution history.

THE COURT:  All right.  So you take a more fundamental position:  None of this is limiting.

MR. KIBLAWI:  That's right.  Well, our first position is it's not limiting under the case law because the body of the claim does sufficiently define a complete structural invention.

As he mentioned, there is a ratio.  All of the dimensions of the product that's described in the patent are accounted for and described definitely with sort of conclusive definitiveness in the body of the claim.

And --

THE COURT:  But, how is that?  If you don't know we're talking about a base plate, you just blind everything else out, block it all out, and you look to the comprising, the actual elements, all you know is you've got a flange with a certain thickness, and a hub, and that's it.

MR. KIBLAWI:  Right.  Well, you have a flange and a hub which, when you construe those terms, we interpret those terms, understand those terms in light of the specification, you know the context is in the context of hard disk drives.  And anyway,

that's not -- that's not an actual ripe dispute between the parties.  Nobody's contesting that these are flange and hub, in the context of the patent, clearly of -- you know, as informed by the context of the preamble and the specification, clearly of a swage mount or base plate of a hard disk drive.

What makes the patent -- makes the whole invention incomplete, transforms that complete dimensional ratio of the body and makes it incomplete is throwing in some unknown limits, unknown threshold as to what two of those dimensions in the body -- namely the flange thickness and the hub height have some limit that's unknown.  You can't determine those from the context of the specifics.

**THE COURT:**  Well, so the critical debate then is "low profile."

**MR. KIBLAWI:**  That's right.

**THE COURT:**  I mean, whether you construe "base plate" as limiting or not, you concede that in the context it's talking about a base plate.  So frankly, whether it is technically limiting because it appears in the preamble, the word "base plate," or whether you can infer the content -- I mean, I'm not sure what consequence that has in the end.  What's consequential is the "low profile."

We don't know what we're talking about, because there's no -- if it said "not to exceed X millimeters," then there would be no debate.  Right?

**MR. KIBLAWI:** (Inaudible)

**THE COURT:** On the other hand, there are cases that talk about rejecting definiteness, even though it is not quantified down to the nearest percentage or something, but one practiced in the arts can at least discern the range.

I guess, you know, some of those, it's a little more clear what the acceptable tolerance might be. Whereas here, you would argue that you don't know that.

I mean, if you're trying to say free from interference of RF frequencies or something else, you know to the extent that it affects the actual operation and there are perhaps certain numerical numbers that people can sort of discern if you are practiced in the arts.

And here, there's nothing here. Unless, you know, you realize this is in the context of a hard disk drive and people know generally what the dimensions of hard disk drives are. They're not meters; they're millimeters.

So, why not? I mean, doesn't that inform one skilled in the arts sufficiently?

**MR. KIBLAWI:** Yeah. So, I think I agree with most everything you're saying here. In particular, we understand that we're not talking about kilometers. We're not talking about some impractically sized, five times the height, you know, of what a hard disk drive would be.

But we believe the reason this issue is being raised is

because we do have in the prior art, for example, base plates that we argue in our invalidity contentions, for example, meet the formula.  And we believe that if you just leave this term open to a plain and ordinary meaning when there is no plain and ordinary meaning of "low profile," it's a relative term.

And as opposing counsel has -- as plaintiff has expressed in their reply brief, when you talk about a relative term, you apply the *Nautilus* standard.  The specification must, with reasonable certainty, inform one of ordinary skill in the art of the scope of that relative term.

In this case, we're concerned that when we come down to trial before a jury, they will argue that our prior art base plate is not sufficiently low profile, even though it's for a hard disk drive.  Even though it has all the dimensions required by the body of the claim, they will argue that it is not sufficiently low profile, without ever articulating a specific threshold limit of what is low profile.

We argue in contrast that it is sufficiently low profile, the prior-art base plate, and then you have the jury deciding. And that is where we -- what we contend is, quote-unquote, legal error under the *Eon Corp*. standard.

**THE COURT:**  So what about that?  That if at some point the jury is called upon to determine whether prior art is of sufficiently low profile or something, or infringing the accused, you say, you know, just plain and ordinary meaning.

But if you had to give some definition to it, what would you say?

MR. JOSHI:  Well, Your Honor, here today, our position is that "low profile" meets the *Nautilus* standard and reasonably informs one of ordinary skill in the art what it means.

The jury is going to have the benefit of testimony from one of ordinary skill in the art who, understanding the technology at the time, who, having the background and the context of the patent, the specification, the prosecution history -- which again as I said before, has exemplary dimensions down to a thousandths of a millimeter.

THE COURT:  Exemplary.

MR. JOSHI:  Exemplary.

THE COURT:  Well, give me a little preview.  What would an expert say is the outer limit?

MR. JOSHI:  Well --

THE COURT:  Is there an outer limit?

MR. JOSHI:  I'm not a person of ordinary skill in the art, Your Honor.  That would be something that we -- we think that "low profile" as a term is -- in the context of hard disk drives, as Your Honor has recognized, provides sufficient guidance to one of ordinary skill in the art.

Cases we've cited to you in our brief indicate that the jury can take at face value what one of ordinary skill in the art would argue fits into the context of a definition, as long as

it's reasonably definite.

THE COURT:  Yes.  I'm asking you -- I know you're not necessarily one; you have to be able to summarize what, and you're going to plan the testimony if we get to that point.

MR. JOSHI:  Certainly.

THE COURT:  Give me a preview, so I have some idea of definiteness, what might that expert say?

I mean, is the expert going to say:  Well, for us in the field it really means not to exceed X millimeters?  Or will it say:  Well, anything that fits into a hard disk drive?  What's the expert going to say?

MR. JOSHI:  I think that -- based on my understanding from talking with our client, that people of ordinary skill in the art at the time had an understanding of what constituted a low-profile base plate plate.  There may not be a precise cutoff, but there's going to be some range of values that a person of ordinary skill in the art is going to understand as having qualified --

THE COURT:  So some actual range of quantified values?

MR. JOSHI:  I think that's possible.  But again, not being one of ordinary skill in the art at the time, I can't give you a specific cutoff.  And I don't think the law requires that we have a specific cutoff here.  The patent certainly doesn't.

THE COURT:  No, but it does require that there has to be, you know, a reasonable degree of certainly that one skilled in

the art can understand.

MR. JOSHI:  And so one of the examples we gave Your Honor was if you were to change certain dimensions, even just two of them, you could end up with a base plate plate that was five times as tall.  But maybe someone of ordinary skill in the art might say, you know, twice or three times as tall as the exemplary dimensions in the patent is -- is not low profile.  But again --

THE COURT:  Well, that's what I'm trying to figure out.  What would that person say -- what would it be based on?  When you're talking about degree of RF interference, there's certain things that -- you know, or what is substantially centered on a screen, you know, you can kind of visualize it.  Maybe you get, don't get it down to the nearest, you know, micromillimeter or whatever it is, nanometer, but, you know, you have a sense.

And here, I'm still searching for what that sense is, other than I assume it's got to fit within a hard disk drive.

MR. JOSHI:  Right.

THE COURT:  That gives you some reference.  But, does that mean anything that can fit within the kind of disk drives that were extant at the time of the issuance of the patent or the application of the patent?  Or -- I mean, that's changed over time, too.  What used to -- in a hard disk drive, changed over time.

MR. JOSHI:  That's true.

**THE COURT:**  So is that the reference?  Or is it going to be actual ranges of numbers?  And if so, where do you get that from?

**MR. JOSHI:**  So the reference point is obviously hard disk drives at the time of the patent.  And the range of numbers is going to come from -- again, you remember from the tech tutorial two weeks ago, we showed you a suspension assembly connected to an actuator arm.  And oftentimes you are able to fit multiple ones of those in at the same time.

So you're talking about, you know, a very discrete and defined space that one of ordinary skill in the art is going to understand the parameters of the components that can fit in that space.  And for example, the exemplary dimensions in the patent will give you at least one guideline, guidepost for what constitutes a low-profile base plate.

**THE COURT:**  One guideline, but it doesn't tell you the outer limit.

**MR. JOSHI:**  That's right.  And as I said, I think that one of ordinary skill in the art can go about that one of two ways.  One, they could use a multiplier, one and a half, two, three times the exemplary dimensions in the patent are not low-profile.  Or, one of ordinary skill in the art might understand, based on, again, their knowledge of the art at the time, what range of values people in the industry considered low-profile.

**THE COURT:**  But let's say there is testimony going, you know, one and a half times the exemplary Column 4.  Will that be based on something?  I mean, will that be based on -- I know we don't have it now, but what would that be based on?  Sort of curious.  Just looking at hard drive sizes at the time?  Or what?

**MR. JOSHI:**  It would be based -- well, in part on hard disk sizes at the time, but more specifically on the actuator arm and suspension assembly, which is a much smaller component of our disk drive.

**THE COURT:**  Right.

**MR. JOSHI:**  And one of ordinary skill in the art is going to understand the design constraints that went into creating a functioning actuator arm and suspension assembly, which is going to set the bounds of the types of base plates that could fit and work, according to the teachings of the patent.base plates

**THE COURT:**  So the technique, as I understand it, would be look at what was in the field, what was actually being practiced at the time the patent -- I'm curious whether that's application, approval.  What's the time frame when you're trying to measure something like this?  Which point?

**MR. JOSHI:**  Well, here --

**THE COURT:**  Things change so quickly.

**MR. JOSHI:**  That's true.  So we would be looking at -- the reference point would be around the time of the invention.  And

so the -- the person of ordinary skill in the art would consider what the size of the art was at the time.

And yes, Your Honor, as you have noted, the art has changed. So older base plates plates tended to be taller; more recent base plates tend to be thinner.  But at the time, there was a range of base plates that could properly function in a hard disk drive that one of ordinary skill in the art is going to understand.

**THE COURT:**  All right.  So it sounds like the technique, at least, is being proffered at this juncture.  I know there's no commitment yet.  There is some objectivity to it.  There's some actual -- you look at the time of the invention, what the practice was, what the size of actuator arm assemblies and all this sort of stuff, and that defines the limit.

So what's wrong with that?

**MR. KIBLAWI:**  So, a couple of points.  First of all, a lot of this seems to be just speculation from my colleague, opposing counsel here.  Not really sure this is an objective standard.

Second of all, this convoluted method he's come up with clearly sort of belies what a plain and ordinary meaning is. Something that's well understood, for example, to the jury, to the public, to one of ordinary skill in the art.

He cited a number of cases in the reply brief that where a plain and ordinary meaning was accepted.  But if you look at those cases, the decisions specifically stated that these terms

like "affix" have a clear and well-understood meaning.

We're talking here about a relative term, "low profile." Even the explanation of what that could possibly mean seems to rely on what will eventually be competing opinions as to what could possibly constitute a low profile.

But even that is irrelevant, because under the *Nautilus* standard, for a term, a relative term like "low profile," it's what the specification and the prosecution history inform with reasonable certainty.

And in this case, he's pointed to one example.  The single example in Column 4 of the dimensions, typical dimensions of the invention -- those were the words, "typical of the invention" without ever using the term "low profile," granted (Indicating quotation marks).  And also, typical dimensions of typical prior art profile.  Column 4 refers to them as "typical prior art dimensions."

The only idea you have in the specification is as to what "low profile" could possibly mean, as well as in the prosecution history, is a statements in the background that it would be desirable to have a base plate plate with a profile lower than a conventional base plate plate.

However, the specification also informs one of ordinary skill in the art or anybody reading it that the typical conventional base plate plate -- not typical low profile prior art base plate plate, just the typical conventional base plate

plate -- has the same profile as the typical base plate plate of the invention.  So it makes a whole mess of it.

Rather than inform one of ordinary skill in the art as to the meaning, it makes the whole claim indefinite.  That's our other additional argument.  That if we were to accept that the term is to be given weight, and if we were to accept that the definition of that term is something other than the only sort of definite boundaries we have for what the dimensions including the profile of the base plate could be, i.e. the formula, if you accepted there was a different definition, then we certainly could not understand what the limits of that definition are because the specification contradicts itself as to what "low profile" is.

THE COURT:  What about this contradiction?

MR. JOSHI:  So there were two points there, and I'll address the contradiction first.  The contradiction that defendants claim exists doesn't exist at all.  The argument they're making is based on a misreading of the patent.

It's true that the patent shows exemplary dimensions of the invention and exemplary dimensions of typical prior-art base plates.  And it's true that those dimensions are approximately the same.

But the '841 patent and the inventors of the '841 patent did not purport to claim that they had invented low-profile base plates.  What they invented was low-profile base plates that

were also optimized.

What that means is that the examples in the patent show a low profile-base plate of the prior art that did not meet the dimensions of the geographic -- geometric -- geometric ratio, but nevertheless was low-profile.

In other words, it's the combination of two different features, low-profile and optimized, that sets the scope of the patent.

So there's no contradiction there.  And the patent is not setting up an uncertainty as to what "low profile" means.  And the example defendants point to is not a contradiction.

THE COURT:  So therefore, a conventional plate could be a low profile.

MR. JOSHI:  Absolutely.  And in fact, that's the whole point of this invention.  People were trying, at the time, were trying to create lower and lower profile plates, but they weren't all performing in the way that the industry wanted.

Our invention was to create plates that were lower than certain conventional base plates, but might have had the similar profile as others, but nevertheless additionally were optimized according to the formula.  And those two things together set the scope of the patent.

Now, the other point that my colleague made was that the terms where plain and ordinary meaning has been accepted were simple terms to understand.  I would submit to Your Honor that

"low" and "profile" are simple terms that one of ordinary skill in the art can understand.

My colleague here says that we have to worry about the jury. But patents aren't directed to the general public. They're directed to one of ordinary skill in the art. And their alternative proposal for the construction of this term actually uses the word "profile" verbatim, which means they concede that "profile" is a term whose ordinary meaning --

THE COURT: But "low profile" is different. You concede that it requires -- you seem to concede that you can't just look at it and know. It has to be informed by testimony, for instance, of those skilled in the art, experts, to talk about what existed at the time, what the ranges were, et cetera, et cetera.

So I thought the point is: Well, it's not exactly plain and ordinary meaning; it's one that's going to have to be informed by some expert testimony.

MR. JOSHI: But that's not uncommon for claim construction, Your Honor. That's what we're supposed to do here.

THE COURT: Well, that answers the indefiniteness claim, to a certain extent. It doesn't answer if it's going to be deemed limiting. And if it's deemed definite enough or capable of being definite enough, how are we going to construe this thing? Just to leave it as plain and ordinary leaves a lot of incertainty. It's not obviously plain and ordinary. Not as

obviously plain, in any event.

MR. JOSHI:  What I would say, Your Honor, is again we're looking at this from the perspective of a layperson, when read in the context of the patent.  And again, I understand they're exemplary dimensions, but they are very precise, within a thousandth of a millimeter, examples here.  So, we have some very specific context for one of ordinary skill in the art who is going to understand the scope of the technology at the time.  And to one of ordinary skill in the art, what a low-profile base plate is would be plain and ordinary.

THE COURT:  So when we say something doesn't need construction because we just follow the plain and ordinary meaning, that's plain and ordinary meaning that would be apparent to one skilled in the art, as opposed to a juror?

MR. JOSHI:  That's exactly what we're saying.  And that's the standard for claim construction.  And the jury is going to have the benefit of testimony on the plain and ordinary meaning of these terms.

If we were required -- and the case law is clear that we're not required to resolve with absolute unambig- -- to resolve with, you know, univocal unambiguousness, we aren't required to do that, according to the case law.

What we are required to do is provide a term that one of ordinary skill in the art would understand.  The patent is directed to one of ordinary skill in the art, not directed to a

layperson.

THE COURT:  Your response?

MR. KIBLAWI:  A few points here.

First, I want to first state that, again, the description of the typical prior art dimensions again is not limited to typical low profile.  Never states that.  Read the whole patent.  The admitted prior art is not described as low profile.  Just says typical conventional, or typical prior art dimensions.  And there's no suggestion that that's just limited to typical prior art low-profile base plates.  To suggest otherwise is reading something into the patent that's simply not there.

Furthermore, even if we were to accept that the exemplary typical conventional prior art dimensions were understood to be low-profile, then in the totality of the four corners of the patent, in the specification, you have just still one example of what would be considered a low-profile base plate, because the dimensions of that typical prior art and the dimensions of the typical base plate of the invention are the same.

So you have one example.  And one example certainly would not inform one of ordinary skill in the art of the entire scope of what a low-profile base plate is.  What if it was a little higher?  In the prior art, there was a base plate that was a little higher than the one exemplary dimension?  Is that within the scope of plain and ordinary?

Now, in terms of the propriety of plain and ordinary

meaning, certainly it's to one of ordinary skill in the art. But also in the case law that they've cited, themselves, the reason plain and ordinary meaning was adopted is because the court noted its got a well-understood meaning in general.

In the case of *Eon Corp. versus Silver Springs*, the terms were, for example, "portable" and "mobile."  These are not relative terms where you have a must have more difficult time trying to understand what the meaning is.  These are terms that I think anybody can generally understand.  They have well-understood meanings.

**THE COURT:**  So is that a requirement?  I mean, if this Court were to refrain from affording a particular construction and leaving it to plain and ordinary meaning, does it have to be something that, therefore, plain and ordinary meaning generally understood by those not --

**MR. KIBLAWI:**  Not necessarily.  I believe that the actual standard is to one of ordinary skill in the art.  But I think what the Court does not want to see happen is when you have a fundamental dispute about claim scope.  In this case, it's the only dispute about claim scope.  And it's a critical dispute that will drastically affect the boundaries of the claim.

So this is a fundamental dispute of claim scope that they don't want competing experts with competing sides to simply argue different interpretations of that to a jury, so that a jury will decide this fundamental issue, decide whether a

prior-art product falls within the scope of the claim, or conversely, an accused product falls within the scope of the claim.

So in this case it's really much more critical than potentially "portable" or "affixed" like some -- the claims, the cases that --

THE COURT:  So why shouldn't the Court, as a case management rule, if it appears from the proffer at least that plain and ordinary meaning will be evident to one skilled in the art for various reasons, and that testimony is likely to give some meat on the bones and explain what one skilled in the art would have construed that, and likely -- seems like likely to be informed by the actual state of prior art and what was in use at the time, but reserve the question without prejudice to whether or not at some juncture, whether it's summary judgment or perhaps even at trial, that a judgment might be rendered on the question of, as a matter of law, whether this is, notwithstanding this testimony, still indefinite?

MR. KIBLAWI:  Uh-huh.

THE COURT:  I mean, part of it is I don't have -- I mean, it is a little bit speculative.  I'm asking present counsel for it taking a position now, well in advance of sort of preparing expert testimony or meeting a summary-judgment motion.  But if I were to allow this to proceed, at least at this juncture, because it's not so clear as a matter of law that this couldn't

have a plain and ordinary meaning that may be of sufficient -- with sufficient definiteness, but without prejudice to revisiting this when there's some meat on the bones.

**MR. JOSHI:**  Your Honor, if I can add one thing.  So, counsel is trying to frame this as a matter where it's a dispute of claim scope.  But really, it's a question of fact.  The art at the time exists.  We can't change that.  There were base plates in existence at the time, and they're going to have a certain profile.

Our expert and their expert is going to go and look at that art and come up with certain base plates and their sizes.  And it's going to be a very simple question as to what range of base plates existed at the time.  There's going to be a very -- I don't think that it's --

**THE COURT:**  Well, maybe, maybe not.

**MR. JOSHI:**  Sure.

**THE COURT:**  Because there may be such nebulousness as to what constitutes a sufficiently low profile that -- and when we look at the prior art, et cetera, you know, I don't know.  I mean, I'm going to have to see at that point.

**MR. JOSHI:**  Well, and at that point, your proposal of at this juncture determining that that low profile has a plain and ordinary meaning that is sufficiently definite and reserving at a later time, once we have the benefit of expert testimony, if the Court at that point wants to propose that both sides revisit

the issue, and then with the benefit of expert testimony provide a clearer limit, that can be done at a later time.

I don't think it's going to be necessary, because one of ordinary skill in the art is going to be able -- both of the sides are going to have clear guidance from the art, as to what constitutes low profile.

**MR. KIBLAWI:**  Can I respond to that?

**THE COURT:**  Yeah.

**MR. KIBLAWI:**  I would say that we definitely have not resolved the issue of whether or not one of ordinary skill in the art would understand what the term "low profile" means.  So we can't just push that aside.  Also, I would also mention that he's talking about bringing in extrinsic evidence, some range of prior art products.

But again, the *Nautilus* standard for a relative term, as articulated in plaintiff's reply brief, is whether the specification and the prosecution history inform one of ordinary skill in the art with reasonable certainly.  That's what the standard is.

And the specification prosecution history combined provide one example that we assume is a low-profile base plate, even though that label is not used, and then muddles the whole thing with a statement, again, that, it will be beneficial to have a base plate with a profile lower than a conventional base plate.

Subsequently to that, it states in Column 4 in the table

that typical conventional base plate dimensions are the same as the typical dimensions of the base plate of the invention.  So within the legal standard, within what specification the prosecution history informs one of ordinary skill in the art, our argument is if this term is given weight, it's indefinite because the specification and prosecution history muddle the whole thing, confuse it.

MR. JOSHI:  Your Honor, the Federal Circuit just recently in 2017, as cited in our reply brief, addressed relative terms in the context of the *Nautilus* standard, and found that they -- they don't rendered patent claims invalid, as long as they satisfy the test.  And they actually gave examples from Supreme Court precedent, discussing the terms "high" and "substantial" as sufficiently definite to those skilled in the art.  I think that falls squarely within the context of what we're discussing here.

"Low profile" to one who is skilled of -- of ordinary skill in the art, those terms are sufficiently definite to one of ordinary skill in the art.

MR. KIBLAWI:  So that is exactly my point.  That *Nautilus* standard is what's applied here.  The *Nautilus* standard dictates that the specification and prosecution history must convey with reasonable certainty a definite scope.  And in this case, it is not unlike the other cases that were cited where the specifications did convey reasonable scope.

Beyond that, stating that one of ordinary skill in the art can understand from one example is nothing more than unsubstantiated attorney argument.  We don't know from his statement whether one of ordinary skill in the art could understand that.

We posit that clearly, given the direct contradiction, this is irreconcilable.  It's is an uncurable --

**THE COURT:**  That direct competition assumes that conventional dimensions weren't covered by the notion of low profile.  I understand it didn't expressly say that, but I don't know that a person skilled in the art wouldn't, you know, deal with that in a way.

So I think that the question of indefiniteness has to be decided, at least at this juncture, with sort of doubts, resolving doubts in favor of allowing this to proceed without prejudice to looking at this issue more closely, once we have the proper juncture in which I can see exactly what the arguments are.  And whether this meets the *Nautilus* test or not.

So I'm going to take this under submission.  I'm inclined to find that the preamble does have some limiting affect.  I think the closest question, and the most significant question, I think everybody would agree, is the low profile question.

And the bottom line is I'm not going to resolve that with sufficient definition today.  But, just indicate that I do have concerns with that, and I'm going to leave that door open for a

juncture where I can decide this on a fuller record.

So I will take the matter under submission.  This has been helpful.  I appreciate your argument.

MR. KIBLAWI:  Can I just ask one question?

THE COURT:  Yeah.

MR. KIBLAWI:  Trying to understand completely.  Does that mean that we can still -- the question of whether it is definite or indefinite under law is still potentially open?

THE COURT:  Yes.  Yes.  I said it might come up in summary judgment, might come up at trial, may come up at some other juncture, or perhaps, you know, in case management, we can figure out a specific motion addressing this issue.

I'm just saying at this point, I'm not ready to say as a matter of law it's totally off -- you know, off the table.  I just -- you know, based on I'm getting sort of a preview off the cuff from counsel, I have no idea exactly what it's going to show, and I'll have it to judge it at that point under the *Nautilus* standard, once I see that.

MR. KIBLAWI:  All right, Your Honor.

THE COURT:  All right.

MR. JOSHI:  Thank Your Honor.

THE COURT:  Great.  Thank you.

THE CLERK:  Court is adjourned.

(Proceedings concluded)

## CERTIFICATE OF REPORTER

I, BELLE BALL, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_/s/ Belle Ball_

Belle Ball, CSR 8785, CRR, RDR

Sunday, March 11, 2018