**Pages 1 - 15**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Edward M. Chen, Judge

INTRI-PLEX TECHNOLOGIES,INC.,  )
                               )
          Plaintiff,           )
                               )
  VS.                          )       **NO. CV 17-01097-EMC**
                               )
NHK INTERNATIONAL CORPORATION, )
ET AL.,                        )
                               )
          Defendants.          )
_____)

San Francisco, California
Thursday, May 10, 2018

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:

　　　　　　　　　　SIMPSON, THATCHER & BARTLETT LLP
　　　　　　　　　　425 Lexington Avenue
　　　　　　　　　　New York, NY  10017
　　　　　　　　**BY:  NOAH M. LEIBOWITZ, ESQUIRE**


For Defendants:

　　　　　　　　　　SINGULARITY LLP
　　　　　　　　　　555 Twin Dolphin Drive - Suite 610
　　　　　　　　　　Redwood Shores, CA  94065
　　　　　　　　**BY:  FRANK L. BERNSTEIN, ESQUIRE**

　　　　　　　　　　SUGHRUE MION, PLLC
　　　　　　　　　　2100 Pennsylvania Avenue, NW
　　　　　　　　　　Washington, DC  20037
　　　　　　　　**BY:  FADI N. KIBLAWI, ESQUIRE**
　　　　　　　　　　**WILLIAM H. MANDIR, ESQUIRE**

Reported By:        Pamela A. Batalo, CSR No. 3593, RMR, FCRR
                    Official Reporter

<u>**Thursday - May 10, 2018**</u>                                <u>**1:44 p.m.**</u>

**P R O C E E D I N G S**

**---000---**

**THE CLERK:**  Calling CV 17-1097, Intri-Plex Technologies, Inc. vs. NHK International Corporation, et al.

Counsel, please say your name for the record and also say your name before you speak.

**MR. LEIBOWITZ:**  Yes, good afternoon, this is Noah Leibowitz of Simpson, Thatcher & Bartlett for plaintiff Intri-Plex Technologies, Inc.

**THE COURT:**  All right.  Thank you, Mr. Leibowitz.

**MR. BERNSTEIN:**  Good afternoon, Your Honor.  This is Frank Bernstein from Singularity on behalf of the defendants. With me on the phone are my colleagues Fadi Kiblawi and William Mandir of Sughrue.

**THE COURT:**  All right.  Thank you.

All right.  We are on for plaintiff's motion for leave to amend asserted claims and infringement contentions, and the issue that's been teed up in particular is an amendment to add additional IPT products that practice the invention.

How many products are there?  What are we talking about in this case?

**MR. LEIBOWITZ:**  Yes, Your Honor, this is Noah Leibowitz.

We have a number of additional IPT products that were --

about information of which was sort of gathered as, you know, investigation of the case proceeded.  And we have kind of split those because there were additional claims that were added as well which defendants really don't oppose.  We split the chart on the IPT products into those that infringe or that practice the claims, all four claims or just two of the claims.

There are roughly about 60 IPT products that were -- that were added there, Your Honor.

THE COURT:  Are they evenly split between the new claims and the old claims?  Remind me.

MR. LEIBOWITZ:  So there -- I'm looking at that, Your Honor.  It's hard to tell if they are evenly split.

With respect to four of the claims, there's -- there's more, and then with respect to two of them, there is sort of a subset of the total number of products because those two claims, the equation -- the limit is reached in that equation before the others.

THE COURT:  And so what is the reason -- I guess part of your reason is that claims were added, but with respect to the original claims that were asserted, what's the reason for the delay in identifying these products?

MR. LEIBOWITZ:  Sure, Your Honor.  So I think partly they were just additional products that add to the claims and were further investigated that were identified by IPT.  And then as we had told defendants, we were sort of waiting to put

together a full amendment to the infringement contentions rather than do it in a piecemeal fashion to include everything in one amendment and put it all together.

And I think we -- you know, we cited, Your Honor, to a couple of cases that reflect the practice of doing it that way, and that's really why it was done that way. And I would also say, Your Honor, just full fact discovery is ongoing and so there really isn't a claim that we're at a stage where this prejudices the defendants in any way to add these additional IPT products.

**THE COURT:** What is the purpose of adding these products? Does it have anything to do with the date of invention? What's the purpose here?

**MR. LEIBOWITZ:** Sure, Your Honor. It's not a date of invention issue. It's more that these products -- to show, for example, commercial success as an objective indicia of non-obviousness. To show sort of the totality of the products that practice these claims once the invention was made.

**THE COURT:** All right. So it goes to obviousness, commercial success as it relates to obviousness?

**MR. LEIBOWITZ:** Yes, Your Honor.

**THE COURT:** Let me hear then from the defendants.

I understand the argument, and there is some case law that suggests that we only look to diligence and delay. We don't look to prejudice. Other courts have looked to prejudice.

What is the prejudice here, given that we haven't set dates yet?

MR. KIBLAWI:  Okay, Your Honor.  Good afternoon.  This is Fadi Kiblawi for the defendants.

I wanted to respond to that, but also make a couple of clarifying points.

First, the added claims are of more narrow scope than the original claims, so any products that would be read on by the added claims would have equally been read on by the original claims.  So I don't believe that the added claims have any bearing on these additional covered products.

Additionally, in terms of the prejudice, you know, it's difficult to answer this question, Your Honor, because we don't really know -- I guess now is the first time we've heard of the intended purpose of these additional products.  However, you know, we note that they have not supplemented -- the plaintiff has not supplemented their disclosures of, like, sales information under, for example, Rule 3-2 -- under 3-2, so we're not really sure -- we're not really sure how they are going to be able to use these additional products.

We've been told by plaintiffs that they do not intend to further supplement their infringement contentions, so I don't know when or if they -- how they will, you know, supplement or if they are going to rely on additional sales information, but in the absence of sales information, I suppose it would be

difficult to argue non-obviousness based on commercial success or whatnot.

So I'm not really sure how we would be prejudiced at this time because we're just now hearing what the purpose of these additional covered products would be.

**THE COURT:**  All right.  Well, let me ask Mr. Leibowitz, what is your intent with respect to disclosure of sales information?

**MR. LEIBOWITZ:**  Your Honor, we felt the sales information was reflective of these products, but certainly if there is sales information that is additional -- I mean, I think discovery is ongoing.  We had told Mr.Kiblawi that in fact we had additional documents that -- or were expected to have a production of additional documents for them shortly.

So we certainly do expect to be able to support the -- the reliance on -- with respect to these products.  And, you know, it's really the full -- the amendment with respect to -- local rule, you know, 31(g) was what we were, you know, intending with respect to anything that sort of practices the -- you know, these products that practice the patent, but then even without -- partly sales information certainly is -- goes to that, but there are 60 products here and they do practice the patent, and so we think that's really the -- you know, again, maybe they could have been identified earlier, but even some of the cases that we cited to Your Honor speak to that and allow

amendment in circumstances like this, even where products could have been identified earlier where there really isn't a prejudice to the defendants at this stage of the case.

THE COURT: All right. Well, based on your representation -- and I'm going to hold you to it -- that the sole purpose of this is to establish commercial success as it goes to the question of non-obviousness and nothing else and with the understanding that you will respond promptly with respect to any disclosure requests or document requests as to sales information as to these products so as not to inhibit the speed of the adjudication of this case, I'm going to allow the amendment. But I want to make it clear that the purpose of this amendment is as stated and, as so, delimited and that discovery relative to that issue will be forthcoming quickly.

So let's talk about the case management of this case and setting of dates and trial dates in particular.

I'm inclined to set this for a March 2019 trial with nonexpert discovery to be closed by either the beginning of September -- around September -- like September 20th would be the normal date. And so that would give you the next four months or so to complete discovery.

I know the defendants had proposed December close of trial -- close of fact discovery and IPT proposed August. But unless I'm convinced that we need to prolong this past a September 20 date for close of nonexpert discovery, I'm going

to set my trial date according to that.  So I'll hear any responses to that.

But my proposal is a September 20th close of nonexpert discovery, a trial date of March 25th, 2019.

Any objection?

**MR. LEIBOWITZ:**  No objection from IPT, Your Honor.

**THE COURT:**  All right.  Well, I'm not hearing anything from defendants either, it sounds like.

**MR. KIBLAWI:**  Yeah.  Sorry.  This is Fadi Kiblawi for defendants.

I think we're amenable to a September 20th close of fact discovery.  Our only concern is that, you know -- that IPT has noticed, I believe, nine witnesses that reside in Japan and not a single fact witness deposition has been taken yet in this case.  And, you know, our concern is that this might be -- also beyond that, we're still awaiting further document productions from IPT, from plaintiff, which, you know, would take some time to go through.

They have recently produced, I believe, their first responsive -- production responsive to our discovery requests the end of March, and we are preparing supplemental discovery requests based on that.

Our understanding is that they have additional document productions that are forthcoming as well, and we still have -- not a single fact witness has been deposed yet in this case.

August tends to be a time in Japan where many companies are somewhat closed.  So we had been willing to compromise on an October fact discovery deadline to accommodate that and to ensure that we would not have to come back to the Court and request an extension or modification to the schedule.

But obviously we're at the Court's discretion here, so if you would -- essentially our position is that September appears to be a little aggressive given that the state of discovery at this time, but we are willing to accept it if that's --

**THE COURT:**  I can also give you -- if there are that many depositions scheduled for Japan and you say August is a tough date or tough period of time in Japan, I can also give you an April 15th trial date with a discovery cutoff of October 4th.  That would give you a couple more weeks, a few more weeks.

**MR. LEIBOWITZ:**  Your Honor, can I just address this quickly, particularly Japanese deposition issue, because the parties have conferred on that and we've agreed, I thought, to limit the depositions in Japan to three or four witnesses and defendants agreed that they actually had a couple -- one person who was coming to the United States for a mediation that will happen in this case in July and to do that deposition then, and one person who is in the United States, to do that deposition here obviously.

So we don't think there is that many witnesses that we're

going to be doing in Japan.  We think the parties have agreed to that.

And four-and-a-half months seems like -- four months plus the remainder of May, right, seems like plenty of time, from our perspective, to get that finished.  In fact, we actually proposed to defendants to do the depositions in Japan the first couple of weeks in June.  They said that doesn't work, but we were hopeful to get them done in June or certainly July.  So we don't think we need to go further out, Your Honor.

I would also just point out in terms of April 15th, unfortunately right at that time is Passover, so we may have a logistical issue on our side.

**THE COURT:**  All right.  I'm going to go with my original February 25th date.  There is enough time in there to make whatever accommodations you need to make, it appears to me, since we've already gone through a good part of this case and you have my earlier ruling with respect to some of the claims.  So I'm going to go ahead and send a schedule out.

Let me ask with respect to ADR whether there is any further thought about alternative dispute resolution, any opportunity for that?

**MR. LEIBOWITZ:**  Yes, Your Honor.  This is Noah Leibowitz from IPT.

We do have a mediation set up under the Court's auspices for ADR.  The date is July 10th.

THE COURT:  Okay.

MR. LEIBOWITZ:  And so we are working toward that. And I -- certainly the parties can talk among themselves prior to that date, but we do have a formal mediation session set up for then.

THE COURT:  Good.  All right.  Then I'm going to get out a scheduling order memorializing a March 25th trial date with a nonexpert discovery cutoff of 9/20 of '18.  There will be other interim dates.

The summary judgment date will be a little earlier than what you had anticipated because I need a certain amount of space, but I'll try to accommodate that.  But that will be heard probably in December, if there is going to be summary judgment.

So I will get out a schedule.  We should probably have one more CMC as we get towards -- after your mediation and before close of discovery, so perhaps in late August, early September -- early September, Betty?

THE CLERK:  September 6th at 10:30.

THE COURT:  All right.  September 6th for the next CMC in this case or status conference.  All right.  So we'll get out a scheduling order.

MR. KIBLAWI:  Your Honor, this is Fadi Kiblawi for defendants.

Before we adjourn, I wanted to circle back to the first

issue, the motion to amend.  I wanted to tie up something really quickly.

We had mentioned in our opposition that -- and I believe plaintiffs -- correct me if I'm wrong, Noah -- I believe plaintiff did not object to this, supplementation of their invalidity contentions to address the newly-added claims.  I wanted to make sure that -- I wanted to actually inquire as to whether we need to take further action with respect to the supplemental invalidity contentions.

We had already served them on plaintiff, and I believe in their reply, they did not object to them, and if that could be reflected in the order or if you would like us file an additional motion seeking leave with respect to the supplemental or amended invalidity contentions.

THE COURT:  All right.  Are we talking about infringement and invalidity or just invalidity?

MR. KIBLAWI:  Right.  So in their amended infringement, they added two of the claims from the patent, so we amended our invalidity contentions to address the two newly-added claims.

THE COURT:  Right.  And your question is whether I need to address those expressly or --

MR. KIBLAWI:  Whether we need to seek leave from the Court with respect to those supplemental invalidity contentions or whether you can, in your order, just sort of grant --

THE COURT:  Is there any opposition to that?

MR. LEIBOWITZ:  No, Your Honor.  We told them that we didn't -- they're reciprocal essentially to the infringement amendment, and so we don't oppose that at all.

THE COURT:  All right.  Well, then, I don't think -- I mean, basically we have a stipulation.  I don't think you need to seek leave and I would give it, even if you did, in light of these circumstances.  So I'll just put that in a minute order.

MR. KIBLAWI:  Thank you, Your Honor.

THE COURT:  All right.

MR. MANDIR:  Your Honor, this is William Mandir for defendants.

Before we leave this first issue, I think Mr.Kiblawi had -- although the Court ruled on the addition of new products, I think there is an issue of removal of certain products that Mr.Kiblawi wanted to address.

MR. KIBLAWI:  Sorry.  But I think that -- I sent you an email on that.

It's my understanding -- I was trying to understand the motion for leave, see if there was some additional minor edits, and we don't really know what those minor edits are.  We are trying to understand them and trying to go through in detail the amended infringement contentions and haven't really noted any minor edits.  You know, essentially we're still trying to figure out what the minor edits are.  I'm assuming it's

typographical.

THE COURT:  All right.  Is that the case?

MR. LEIBOWITZ:  Your Honor, I'm -- we served these on them more than a month ago, Your Honor, so this is the first I've heard that they didn't have a chance to compare the old ones and the new ones.  I thought we all knew what we were talking about and we had motion practice addressing the schedule.  So I think it should be amended as we reflected in the document that we served on them and filed attached to our motion.

MR. KIBLAWI:  Your Honor, this is Fadi Kiblawi for defendants.

Again, we compared closely the amended with the additional.  We noticed that there were additional covered products, additional claims, additional accused products.  We could not figure out what the minor edits were and we wanted to make sure -- and I suppose we can take this offline and discuss it on the side, Noah, but I'm not really sure what those minor edits are.

THE COURT:  Why don't you meet and confer and let me know if there is anything else that needs to be brought to my attention if there is some issue that you can't resolve with respect to the amendment.

MR. KIBLAWI:  Thank you, Your Honor.

MR. LEIBOWITZ:  That's fine, Your Honor.

**THE COURT:** If you could let me know within the next, let's say, five days if there's a problem.

**MR. LEIBOWITZ:** Yes, Your Honor.

**MR. KIBLAWI:** Thank you, Your Honor.

**THE COURT:** All right. So we'll see you at the next CMC or talk to you then.

**MR. KIBLAWI:** Thank you, Your Honor. I think we have a hearing in a couple of weeks.

**THE COURT:** That's right. We'll see you then. Thank you.

(Proceedings adjourned at 2:04 p.m.)

CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   Tuesday, May 15, 2018

*Pamela A. Batalo*
_____
Pamela A. Batalo, CSR No. 3593, RMR, FCRR
U.S. Court Reporter