Pages 1 – 50

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE EDWARD M. CHEN, JUDGE

INTRRI-PLEX TECHNOLOGIES, INC.,  )
                                 )
            Plaintiff,           )
  VS.                            ) NO. C 17–01097 EMC
                                 )
NHK INTERNATIONAL  CORPORATION,  )
Et al.                           )
                                 )  San Francisco, California
            Defendant.           )
_____)

Thursday, May 31, 2018

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:

          SIMPSON, THACHER & BARTLETT
          2475 Hanover Street
          Palo Alto, California  94304
     **BY:  NOAH LEIBOWITZ, ESQ.**
         **WYATT A. HONSE, ESQ**.

For Defendants:

          SQUIRE PATTON BOGGS (US) LLP
          1801 Page Mill Road
          Suite 110
          Palo Alto, California  94304
     **BY:  FRANK L. BERNSTEIN, ESQ.**

          SUGHRUE MION, PLLC
          2100 Pennsylvania Avenue, NW
          Washington, D.C.  20037
     **BY:  FADI NAZIH KIBLAWI, ESQ.**
         **WILLIAM H MANDIR, ESQ.**

Also Present:        **AKIRA NOJIMA.**

Reported By:  **BELLE BALL, CSR 8785, CRR, RDR**
       Official Reporter, U.S. District Court

**Thursday - May 31, 2018**                                    **1:46 p.m.**

**P R O C E E D I N G S**

**THE CLERK:**  Calling Case C-17-1097, Intri-Plex versus NHK. Counsel, please come to the podium and state your name for the record.

**MR. LEIBOWITZ:**  Good afternoon, Your Honor.  Noah Leibowitz of Simpson Thacher & Bartlett for plaintiff Intri-Plex Technologies.  And with me at counsel table is my colleague, Wyatt Honse.

**THE COURT:**  All right.  Thank you, Mr. Leibowitz.

**MR. BERNSTEIN:**  Good afternoon, Your Honor.  Frank Bernstein from Singularity on behalf of the defendants.

With me are my colleagues, William Mandir and Fadi Kablawi from the Sughrue firm.  And also present is a representative of one of the defendants, Mr. Akira Nojima, from NHK Spring.

**THE COURT:**  All right, thank you everyone.  Thank you.

It seems to me that the term "low profile," at least as applied to hard disk drives -- and correct me if I have my facts wrong -- but sort of was first evoked in the late eighties, early nineties, and appears to have been -- at least, according to Mr. Dennison, there was a reference back in 1988 to the first 1-inch-high HTD.

And, and the term "low profile" if you are describing HTDs at the time, at least in the early 1990s, late 1980s, I think, a fair inference or a fair conclusion would be one skilled in the

art would think that there was referencing the 1-inch as opposed to the larger HTDs at that time.

Is that a -- is that a fair characterization?

MR. KIBLAWI:  Your Honor, for the defendants.

THE COURT:  Yeah.

MR. KIBLAWI:  So, I would say definitely in the late eighties the term "low profile" in the context of hard disk drives, not the components within, would refer to a one-inch hard disk drive.

But we also received from Mr. Dennison's own evidence that he relied on from the extrinsic evidence, a series, for example, of IBM patents that were filed in 1991 where the term "low profile" was used with respect to a .68-inch hard disk drive, a .67-inch hard disk drive and a .5-inch hard disk drive as the purported sort of newer reduced-height, quote-unquote, low-profile hard disk drive.

THE COURT:  Right.  But it seems like those could be sort of a lesser included.  That is, when talked about -- reference a low-profile HTD.  You are talking about, at least at that point in time, one inch or lower.

MR. KIBLAWI:  In the early nineties.

THE COURT:  Yeah.

MR. KIBLAWI:  Late eighties.

THE COURT:  Yeah.

MR. KIBLAWI:  Perhaps, but again, I would like to emphasize

the point that that's in the context of the hard disk drive height, and the hard disk drive as a whole, but not the components or the suspension of the base plate.

THE COURT:  Right, because now we're talking about a base plate.  And then, it also appears that whether you call it conventional or whatever, that around that same period when patents were being filed in 1981, 1987, 1992, that it was common to have overall z-height of one millimeter.

MR. KIBLAWI:  I would --

THE COURT:  Presumably those would be within -- fitting within a low-profile HTD.

MR. KIBLAWI:  I think that's -- the evidence of record shows that again, referring back to those three IBM patents that in December of 1991 when, they were filed, a -- for example, in those specific documents, a low-profile suspension which was reportedly inventive.

The object of those patents was a low-profile suspension for, again, a hard disk drive that's .67 inches, so lower than the one-inch, was introduced as one-millimeter.  So I would say that in the early nineties, a one-millimeter base plate profile in that patent, 1991, that particular patent was provided as an example of a base plate for a low-profile suspension in a .5-inch or .67-inch hard drive.

THE COURT:  And which patent would this be?  Because I know there's been several now.  There were some that were filed in

September of '91 -- of course, there was the Braunheim.  And which one were you referring to?

**MR. KIBLAWI:**  Referring to -- well, the main one I referred to that defendants referred to in their reply is the Takagi patent which I believe was Exhibit C in the reply.

Now, IPT and Mr. Dennison's declaration also cited to these same patents, and they cite to three of them.  What they fail to mention is that all three are actually essentially the same patent.  They're in the same family.  They're not really different, you know, patents.  But they would be U.S. Patent No. 5,508,860, U.S. Patent No. 5,543,982 and U.S. Patent No. 5,646,802.

**THE COURT:**  Right.

**MR. KIBLAWI:**  And yes, I think they had a priority filing in perhaps Japan in September, and they were filed in the U.S. in December of '91.  And then continued to file continuations, I believe, in the early nineties.

**THE COURT:**  Right.  Now, the term "low profile," how often has the term "low profile" been used specifically with respect to swage plate, swage mounts, et cetera?

**MR. KIBLAWI:**  I believe specifically, with respect to the swage plate or the base plate, I believe it's used in the '841 patent, you know, the patent at issue.

**THE COURT:**  Yep.

**MR. KIBLAWI:** And the Braunheim reference, which was the reference that was applied by the examiner to reject the claims, as a secondary reference.

But I believe those two, I believe, are the only two that I believe actually use the term "low profile" with respect to a swage mount. Other references, I believe, referred to "low profile" with respect to a suspension. And others refer to a "low profile" with respect to hard disk drive. All variably. .5 inch, .67, et cetera, et cetera.

**THE COURT:** Uh-huh. The Brooks patent, the '545, makes reference to a micro swage plate, which is not --

**MR. KIBLAWI:** I believe so.

**THE COURT:** Yeah.

**MR. KIBLAWI:** And perhaps a low-profile suspension, perhaps. I can't recall exactly.

**THE COURT:** So, I mean, is there not kind of a connection between describing swage mounts or plates, that -- although not used often, but using the term "low profile" seems to sort of coincide with low-profile HTD. There seems to be some relationship, that is, you need a low -- does one not apply to the other? Is there some relationship?

**MR. KIBLAWI:** I think if you look at the intrinsic evidence, the intrinsic evidence, I believe, describes the lowering for the low-profile base plate in the context of lowering the profiles of the components within a hard disk drive to achieve

two goals.

One of those goals is to reduce the disk-to-disk spacing within the hard disk drive, and thereby increase the storage density.  And the other goal is to continuously decrease the hard disk drive profile.  And that's a continuous goal.  It did not end in 1988 with the 1-inch.

**THE COURT:**  Right.

**MR. KIBLAWI:**  I think the best example of that are those three IBM patents we mentioned earlier from 1991.  In those, the very invention in those patents was a low-profile suspension.

The purpose of that invention was to reduce -- was twofold.  One, to increase storage density.  And two, to reduce the low -- the profile of the hard disk drive from, believe it or not, .68 inches in the prior art to .67 inches.

So there was no standard hard disk drive size from which you can connect the term "low profile" with respect to a base plate.

In fact, what we see in the '841 patent in the prosecution history, and what was indeed emphasized in this Court's claim construction order and in IPT's claims construction briefing as to why the term should be given weight, is this language of the base plate profile being lower than a conventional base plate profile.

That was emphasized as a reason why this term should be given weight.  And that, I think, is the most clear-cut frame of reference for what the context of this term intends to be or is.

And that is lower than what came before, in terms of base plates.

**THE COURT:**  And there's not been -- the term, itself, "conventional base plate" is a descriptor we now use, not a term that was used in the art at the time?

**MR. KIBLAWI:**  Right.  I think it's just a general term.  I would understand it perhaps to mean a typical prior art.  And it's a very, you know, uncontroversial definition for conventional, typical in the prior art.

And as you may recall, the problem with the '841 patent is that the one example of a low-profile base plate for the invention has the same profile as the typical prior art base plate, which I believe one could reasonably understand to mean a conventional base plate.

So, at the claim construction hearing we heard IPT's counsel argue that:  Yes, it's lower than a conventional base plate, but not lower than all conventional base plates, just lower than certain conventional base plates.

And herein lies the problem.  When it comes to claim construction and the issue of indefiniteness, the focal point, of course, is the intrinsic evidence:  What does the patent and the prosecution history inform one of ordinary skill in the art?

The extrinsic evidence, just a fundamental principle of claims construction, is, quote-unquote, less reliable under *Phillips*.

So with that standard set forth in the patent, there's an issue:  We don't know which conventional, because the typical prior art, i.e., conventional, is the same profile.

So according to IPT when we last were here in this courtroom, the low-profile base plate of the invention is lower than certain conventional base plates.

However, as Mr. Dennison testified, agreeing with Dr. Bogy, the patent does not tell you what the conventional base plate is, conventional as of when, and how much lower than the conventional baseplate.

**THE COURT:**  Well, just to take the first point about what is conventional, if lower than conventional is the key, even though the intrinsic evidence may not specify exactly what that is, isn't there a fair amount of extrinsic evidence about when you look at these, the size of the thickness of the various plates, base plates -- seem to be, a lot of them, the three that you mentioned were around one millimeter.

The implication from the Braunheim was three times what was disclosed there, which would puts it at 1.044-millimeter.  We had some other patents in '87, or least filed in '87, '92 that had an overall z-height of around one.

You know, couldn't one infer that that was sort of the conventional -- that may not answer your question how much lower, but doesn't that -- one skilled in the art could assume that convention meant, you know, what was fairly prevalent, and

found itself in several different inventions?

**MR. KIBLAWI:**  So I would like to first address the Braunheim reference.  So you stated, and I believe IPT also stated this in their declaration, that a conventional is disclosed as 1 millimeter.

Actually, Braunheim, which is another IPT patent, is fairly confusing as to its usage of the term "conventional," as well as "low profile" because it also refers to the same conventional base plates as low profile.  It also suggests that the whole purpose of that invention, unlike the current patent at issue, the '841 patent, the purpose of the Braunheim reference was to invent a low-profile base plate.  And the context for that was to make it lower than conventional base plates currently existing in the market that are reaching the minimal profile limits.

That would certainly be less than 1 millimeter, because by 1996, as we know from Mr. Dennison's own testimony and other references, the disk-to-disk spacing in the profiles were substantially lower than 1 millimeter.

As everybody admits, the profile's continuously evolving and getting lower and lower over time.  So Braunheim, itself, compounds the ambiguity and the inherent vagueness of this language.

**THE COURT:**  What about its reference about the dramatically reduced by at least a factor of three as compared to, quote,

conventional swage mounts, in view of the math, three times .348 is 1.044?

**MR. KIBLAWI:**  Right.  So there's a couple of points to be made there.  One, again, it's fairly, I guess, directly inconsistent with other portions of that same patent, which describe conventional as meaning presently available at the time of that filing.

I believe that's set forth in our reply brief, it is set forth in our reply brief.  That's the first issue.

The second issue is, well, I don't doubt that a 1 millimeter could be considered conventional.  That does not mean that is the lower limit of conventional.

I believe in Braunheim -- again, the inherent vagueness and ambiguity of this language -- also states pretty unequivocally that the whole purpose of that patent is to invent a low-profile base plate that's lower than is currently available in 1996, the time of that filing.

Now, beyond that, as well, in terms of the math there, the one example in Braunheim is a .348.  But if you actually look at the patent, it also states that the profile, their invented profile could be further reduced.

It could actually be further reduced, from our estimation, down to an extra .6 millimeters, about .6 millimeters, because without diving too much into the details here, the Braunheim profile is -- like all the base plate profiles, consists of two

parts.  The flange thickness, the hub height.  The hub height is .145 millimeters.  The flange thickness in that example is .203 millimeters.

And, the patent states that that flange thickness of .203 millimeters can be further reduced, per the invention.  It also states that the lower limit for the flange thickness is the hub height.

So going through all the math, it's even lower.  So I wouldn't even consider necessarily that that unequivocally describes 1 millimeter as conventional.  But I'll be free to concede the point that a one-millimeter in 1998 or 1996 was conventional.

I would not concede the point that is the objectively understood lower limit of conventional, and anything lower than that is low profile.

THE COURT:  How would one ascertain, if one were to just look at that question, what -- if somebody used the term "conventional," how would you ascertain what that is?  Are you saying that is an inherently ambiguous term?

MR. KIBLAWI:  I think, generally speaking, "conventional" would mean typical in the prior art.  I think in other contexts, it might be less ambiguous.

But in the context of the '841 patent, where the typical prior-art base plate is the same profile as the inventive base plate of that patent, the '841 patent, I would say that perhaps

it still has the same meaning as IPT took at the claim construction hearing, but there are many different conventional base plates.

And as IPT stated at the claim construction hearing, their invention, quote-unquote, "our invention" was, you know, to create base plates that were lower than not all conventional base plates, but certain conventional base plates.

We just don't know which ones those certain conventional base plates are, as Mr. Dennison, himself, admitted.

**THE COURT:** So you have that, and then the argument about: Well, if it's lower, how much lower?

If one were to deem conventional base plates to be 1 millimeter for various reasons, would .95 constitute a much lower, or lower than --

**MR. KIBLAWI:** Right. That's right. How much lower.

**THE COURT:** Let me hear from IPT a response to those points.

I mean, it does seem like one contextual reference is to, you know, lower than, I don't know if the word "certain" is their description of yours, or your own, but -- conventional base plate.

But is there a relationship to conventional base plates in defining what a low-profile base plate is?

**MR. LEIBOWITZ:** Sure, Your Honor. So, so I think part of the issue is they come back to this term of "certain conventional base plates." And I think that was -- and we've

put it in our brief -- to the extent that was what was said at claim construction, really what was meant was certain prior art base plates. And there is a difference between conventional here and prior art. And I'll explain that a little further.

But really, the issue that we have fundamentally with what defendants are saying is that these terms, "low profile," right, and "conventional," they're not -- yes, low profile is lower than conventional. There's no dispute there.

But in the industry, these terms refer to categories. Right, there was a category of low-profile hard drives and a category of base plates that were suitable for use in those low-profile hard drives.

So it's not these terms -- the term "low profile" is not, as defendants say, a term of degree or relative, such that you can only -- you know, whether a given base plate is low profile or not depends on what you compare it to. Right?

I mean, that's what they say. They say that even a 2-millimeter base plate could be low profile because 2 is less than 2.2. Or 2 is less than 3. That's what Dr. Bogy their, expert, said at his deposition.

But the way the industry used the term was not just as a comparator: Is A lower than B or is B lower than C. It was designated a category of base plates --

**THE COURT:** But wouldn't the category of low-profile base plates be thinner than conventional base plates?

**MR. LEIBOWITZ:**  Absolutely, Your Honor.  That's absolutely right, and that's what Mr. Dennison said.  The category of low-profile base plates is a category lower than conventional.  And in fact, as he said, there's kind of a gap in between.  Right?

His, Mr. Dennison's opinion --

**THE COURT:**  Before we get to that gap which, is a question of how much lower is lower, how do you define "conventional" then?

I mean, is it 1 millimeter?  Because that's what was sort of -- seemed to be quite prevalent, or was often in play for patents that were filed in late eighties, early nineties, and seems to coincide with 1 millimeter -- I mean, the 1-inch HTDs or what --

**MR. LEIBOWITZ:**  Yeah, and it can coincide, Your Honor with -- not with the 1-inch.  The 1-inch HTDs were the low-profile HTDs --

**THE COURT:**  So what are --

**MR. LEIBOWITZ:**  So it coincided with the HTDs that came before the 1-inch, which were 1.625 inches.  And that's, as Mr. Dennison explained, those were called "half-height drives."

And these designations they all sort of refer to, as Mr. Dennison kind of lays out in his declaration, it all goes to being back to the old floppy drives and the bays in the computer housing that these drives fit into.

So first you had full-height hard drives which took up the whole drive bay.

THE COURT: Yeah.

MR. LEIBOWITZ: And then you had half-height drives which were 1.625 inches. And then you had low-profile drives which were 1-inch.

And as Mr. Dennison explained in his deposition, that's -- actually, that is part of where you get the difference in base plates from, as well. Because --

THE COURT: So what he refers to in his declaration, Mr. Dennison, "as conventional base plates," and listing the Braunheim, listing the three patents that were filed in 1991, and then the other three that had, all of which had a height, overall z-height of 1 millimeter, those were to be used in conjunction with a half-height HTD?

MR. LEIBOWITZ: Correct, Your Honor.

THE COURT: Is that in the record? Is that evident from these -- if I were to look at the patent?

MR. LEIBOWITZ: So as Mr. Dennison explained, all of those, the 1 millimeters, those were under his heading of conventional base plates.

And he does say in Paragraph 30 of his declaration (As read):

"A person of ordinary skill in the art would have known all of the above, and would have known that a

conventional base plate, for use in the older form factor HTDs, would typically have a total z-height of around 1 millimeter or greater."

THE COURT:  So older format would be the pre-1-inch.

MR. LEIBOWITZ:  Correct, Your Honor.  And then when you get to the 1-inch HTDs which are called "low profile," you then have a series of components including base plates that are made and used and suitable for those low-profile drives.  And they're called low-profile components and low-profile base plates.

And just --

THE COURT:  Of course, of course, 1-inch low profile HTDs had come into the market by 1988, according to Mr. Dennison.

MR. LEIBOWITZ:  Correct.

THE COURT:  I don't know how prevalent they were.  And then there was a patent, the '852, that was first filed in 1992, that was entitled:  High-capacity, high-performance, low-profile disk drive.

So, but you're saying even though some of the -- the 1-inch height base plates are referred to in the various patents in his Paragraph 31 were applied for in '91, '92, they were still used in reference to the non-low profile HTD, even though there had already been some introduction of the low-profile HTD as early as 1988.

MR. LEIBOWITZ:  Sure Your Honor.  And that also gets to these particular IBM patents that counsel mentioned from 1991.

**THE COURT:**  Yeah.

**MR. LEIBOWITZ:**  Because part of -- and Mr. Dennison explained this at his deposition.  Part of the issue there was of course you had people in the industry that were trying to make lower hard -- lower-profile hard drives, right, trying to make them slimmer.  And you had those people that were trying to do that with conventional parts.  Right, they were trying to make these things slimmer in any way they possibly could.

And one of these IBM patents in particular, if you -- we had a slide on this, although I'm not sure if we can show it, Your Honor, on the screen.  But if you look at -- why don't we have -- can we have the --

(Off-the-Record discussion between counsel)

(Document tendered)

(Document handed up to the Court)

**THE COURT:**  All right.

**MR. LEIBOWITZ:**  If Your Honor refers to -- this is one of these IBM patents.  If Your Honor refers to the first page in this little book, Slide 2, which has the cover of the patent, and it says it's Figure 6 and 7 from this Takagi patent that counsel mentioned.  The next slide has a blowup of Figure 6 and 7.

So what Takagi was about was about taking a conventional base plate and using it in a low-profile drive, right, trying to use it in a different way.  Takagi is its own invention.

And if you see what we circled here, you can see the base plate in Figure 6 and in Figure 7. And what they did is they flipped the orientation of that base plate upside-down. So that instead of resting on top of the arm assembly, where you see that, that 10-B, that's the flange of the base plate.

THE COURT: Yeah.

MR. LEIBOWITZ: And then the hub projects in. They flipped it over, so that the base plate flange is on the bottom of the arm.

THE COURT: Yeah.

(Document displayed)

MR. LEIBOWITZ: So they were using -- Takagi's a great example in the early nineties of using a conventional base plate which they say is 1 millimeter, that's what Takagi says, but using it in an inventive way, in a different way, to try to lower the height of the drive in a low-profile drive. And Mr. Dennison explained this at his deposition.

And so this is -- you know, this is not an example that proves in some way, as counsel says, that low-profile drives use -- that the designation of 1 millimeter for the base plate can't be -- needs to be a low-profile base plate because it's used in a low-profile drive.

Certainly, people were inventing around this and were trying to use conventional parts to make these drives lower. But what Mr. Dennison says is: You got to a point where the industry

was -- made parts specifically for these low-profile drives, suitable for use in these low-profile drives that were then called low-profile base plates and low-profile components.

THE COURT:  Well, let's talk about that.

MR. LEIBOWITZ:  Sure.

THE COURT:  So let's assume for a moment that we -- there is an understanding in the art about what a low-profile HTD is, and the drop down to 1 inch.

MR. LEIBOWITZ:  Yes.

THE COURT:  And you would be contending, then, that associated with that would be reduced-size assemblies and base plates ---

MR. LEIBOWITZ:  Correct, Your Honor.

THE COURT:  -- coincidental with that.  But then the question -- so it's got to be lower than -- well, I guess there was an attempt to make the 1 millimeter work.

But is there a similar discrete sort of change in nomenclature or descriptor as applied to the HTD, which seemed a little clearer, because there's a kind of a demarcation there with respect to the components within, in particular, the mount. The base plate.

MR. LEIBOWITZ:  Sure.  Absolutely, Your Honor.

And the best -- so Mr. Dennison certainly says there was. And he points to in his deposition, one thing he points out is that this reduction from 1.625 inches to 1 inch in the hard

drive, that's about a 40 percent reduction.  And he said that's exactly what you see in the base plates going from about 1 millimeter in the conventional base plates to .6 millimeters in the low-profile base plates.

And the one thing he points out is that that's a similar 40-percent reduction in base plate, because that's what the industry was trying to do.

You know, certainly there are other components in hard drives, and some of them could be reduced -- you know, couldn't be reduced as much as others.  So you wanted those plates, base plates to be reduced as much as possible.

But certainly, you would want to reduce them at least by 40 percent because that was the reduction in drive size from 1.625 inches to 1 inch.

**THE COURT:**  And so the examples he gives in Paragraphs 34, 35, and 36 of his declaration are examples of those sort of concomitantly-reduced base plate sizes that sort of coincide to work with the now low-profile HTD?

**MR. LEIBOWITZ:**  Correct, Your Honor.

And we also see that in the graph, the chart that Mr. Dennison included in his declaration at -- apologies, Your Honor, it's earlier -- at Page 8 of his declaration --

(Document displayed)

**MR. LEIBOWITZ:**  -- this form factor progression chart.

**THE COURT:**  Yeah.

**MR. LEIBOWITZ:**  And, just to talk about the provenance of this for a minute.

So this was a graph that IPT create in the late 1990s.  So it wasn't --

**THE COURT:**  Is this of their own invention?  Not just in the field, generally?

**MR. LEIBOWITZ:**  So this was -- what this graph shows is the base plates that IPT was introducing in each year.  And this was made in the late 1990s.  It was exhibited at a couple of conferences.  And Mr. Dennison included sheets I'm showing, which conferences it was exhibited at.

And, and as I said, what it shows is this, this drop, what Mr. Dennison called sort of a step function decrease between the conventional base plates in the early 1990s, between 1990 and 1992, to the low-profile base plates.

And then if you look underneath the graph which is at the top of Page 8, to what's on the bottom, what Mr. Dennison did is he took that form factor progression.  There's a line in that graph that deals with mass, and so he took that out because mass is not really relevant to our discussion.

And he then combined the FT, which is the flange thickness, and the HH, which is the hub height, to get the total profile.

(Document displayed)

**MR. LEIBOWITZ:**  And --

**THE COURT:**  The total profile of what?

**MR. LEIBOWITZ:**  Of the base plates.  So this chart plots the hub height and flange thickness. --

**THE COURT:**  Uh-huh.

**MR. LEIBOWITZ:**  -- of base plates as separate lines.  So he, he totaled the flange thickness and hub height together to get a particular -- to get a point.  And he also converted the scale because the graph was in thousands of --

**THE COURT:**  Yeah, I understand that.

**MR. LEIBOWITZ:**  Yeah.  And so if you look underneath, what he shows you there is by 1990, between 1990 and 1992, you see this drop from the conventional base plates that are about a millimeter, to the low-profile plates that are just over .6 millimeters.

Again, that's where he -- you know, one of the points that he shows sort of as evidence of this step function decrease between the categories.  The category of conventional plates and the category of low-profile plates.

And again, you know --

**THE COURT:**  How would this coincide with the shifting prevalence to low-profile HTDs from the half-eight and larger to the 1 inch?  Would.

That show the same time frame in 1990 to 1992, that there was this sort of shift going on in the industry to --

**MR. LEIBOWITZ:**  Yeah, so again that, first low-profile drive was 1988.

**THE COURT:** Yeah.

**MR. LEIBOWITZ:** And they continued to introduce -- again, you know, practically, in the industry, you were trying to make these drives slimmer. But you were also trying to add as much storage as you could, to get larger and larger storage size drives.

So you might have had a thicker drive that had more storage than a thinner drive, than a low-profile drive. So they were still selling half-height drives into the nineties. And, you know, possibly even today, you could buy a half-height drive. It also depended on application. If it was a personal computer or a laptop versus --

**THE COURT:** What about, on the flip side, what would the production volume look like if you were to graph out the low-profile HTDs? When did they start being marketed, and when did they start having a meaningful market share, that sort of thing? What would that graph look like?

**MR. LEIBOWITZ:** So we don't have that graph, Your Honor. But I do think the form factor progression of the base plates probably lagged the decrease of drive size by a little bit because, again, you had people who were trying to make slimmer drives using even the conventional components.

**THE COURT:** So you would surmise that by 1992, when you're into this new -- at least your expert says the low-profile base plate kind of universe, that by then, there were a lot of 1-inch

drives around.

**MR. LEIBOWITZ:**  Absolutely, Your Honor.  And in fact, we have a slide -- one of the product sheets that Mr. Dennison -- so Mr. Dennison, one of things he did is he went to the Computer History Museum here in Fremont.  And in his deposition he said he looked at about 60 different product sheets.

(Document displayed)

**MR. LEIBOWITZ:**  And we actually have another set of slides here, why don't I hand those up.

(Document handed up to the Court)

**MR. LEIBOWITZ:**  And so if Your Honor flips to -- it's on the screen, it's Slide 3 in this packet.  Here's some examples of what Mr. Dennison attached to his declaration of these product sheets of drives in the 1990s.

The left one is a Fujitsu drive called a low-profile disk drive.  The right one is an IBM 3 1/2-inch 1-gigabyte low-profile drive.

And then if we flip ahead in the slides to Slide 12, this is another one.  This is a low-profile HDD.  And it's designated as a low-profile 3 1/2-inch model.  And if you look at the dimensions of this -- first of all, the date on this is March 30th, 1998.

**THE COURT:**  Where do you see that?

Oh, I see.

**MR. LEIBOWITZ:**  So it's blown up on the right side.

**THE COURT:**  Yeah.

**MR. LEIBOWITZ:**  So even as late as 1998, which is contemporaneous with the filing of the '841 patent and ten years after the first low profile 3 1/2-inch drive was -- you know, came out, this is another low-profile drive, it's called "low profile."  And if you look at the height, it's a 1-inch drive.  So this designation of "low profile" for these 1-inch-high drives carried through the 1990s and -- and as did the designation of, you know, "low profile" for components in these drives.

And Your Honor also asked a question about, you know, how often was the term "low profile" used, you know, not for drives but for the components, for base plates.

**THE COURT:**  Yes.

**MR. LEIBOWITZ:**  We asked a very similar question to Dr. Bogy, their expert.  And we had his testimony on that at Slide --

(Document displayed)

**MR. LEIBOWITZ:**  -- at Slide 10 in this packet.  And this was Dr. Bogy's -- their expert's -- answer (As read):

**"QUESTION:**  So when was it that publications about base plates started to refer to them as 'low profile'?  Approximately when?

**"ANSWER:**  I don't know that I could answer that because I didn't do an exhaustive study of that.

But, as I mentioned, I think in the nineties it was -- profiles of base plates were often referred to as 'low profile.'"

THE COURT:  And what documentary evidence -- because in Dennison's declaration, it doesn't -- there's not much nomenclature.  The Braunheim; of course, the '841.  That's all I saw.

MR. LEIBOWITZ:  Yes, Your Honor.  So I think --

THE COURT:  Are there others?

MR. LEIBOWITZ:  So again, I mean, this is an industry term, right?  So it doesn't show up on the engineering specifications for these base plates.

THE COURT:  Does it show up anywhere?

MR. LEIBOWITZ:  But that's where -- I mean, we do see it in other patents like Braunheim, and we do see it -- and again, their expert admitted that -- you know, this is an admission. And it's their burden of proof here Your Honor on summary judgment by clear and convincing evidence on this issue of indefiniteness.  And their expert agrees that the industry used this term "low profile" with respect to base plates, often. And, you know, that is what the evidence shows.

And, you know, and it makes sense, as we show for other components.  I mean, there are -- there's other examples of other components --

THE COURT:  Let me go back to the first question.  How do I

know that a 1 millimeter -- as to the one patent we looked at, tried to fit a 1 millimeter mount into a low-profile HTD, how do I know that 1 millimeter -- you know, with the shrinking of the HTD, that the 1 millimeter still was going to work?

That's low profile -- if it works with it, that could also be deemed low profile.

**MR. LEIBOWITZ:**  Right.  So I think, again, the point is the industry used these as -- these terms as designations of category.

And so I have -- to think of an analogy to this Your Honor, but I have my smartphone (Indicating), right?  And this smartphone is an iPhone X.  And it's a hell of a lot smarter than the first iPhone that came out.  But that doesn't change the designation of the first iPhone as being a smart phone. Right?

The industry, the industry-recognized sort of designation of the category of a phone that has -- a cellular phone with integrated internet and apps and a camera, right, as a smart phone.  So, too, here, you have what the industry recognizes as a category of drives, and a category of components that were suitable for use in those drives.

**THE COURT:**  And there is some linkage.  The category of components kind of followed the category of drives --

**MR. LEIBOWITZ:**  Absolutely, Your Honor.  And that's the evidence.  That's what Mr. Dennison says.

So they can quibble with it, but on their motion, we are entitled to that benefit of that doubt as Mr. Dennison explains in his --

**THE COURT:** Let me ask a more specific question.

You could have draw squares in different ways. We know there's a lot of things you can do with this. The drop in the overall z-height, at least in the IPT products from -- in 1990 and '91 was pretty substantial. I mean, I admit that the drop from '91, '92 is slightly more in terms of quantity, but not by a whole lot more. It's almost a straight line. Almost, not quite.

So why couldn't one say: Well, the big drop really was in '91, therefore it looks like, oh, .9, .95 or .9 --

**MR. LEIBOWITZ:** Sure.

**THE COURT:** Why couldn't that be deemed the low profile point?

**MR. LEIBOWITZ:** Sure. And that actually gets to another point, this point which defendants make a lot of in their reply, which is this issue of approximation, right, and what one of ordinary skill in the art would understand when you say a number. Right?

If you say .6, do you mean .6000, right, or is there some range of approximation around those numbers?

And as Mr. Dennison said -- and so Dr. Bogy was never asked that question, right? So defendants don't have Dr. Bogy saying

anything on that.

So what the evidence here shows from Mr. Dennison is that one of ordinary skill in the art would recognize that these numbers have about a five to 10 percent approximation around them.  So if you say .6, that could include a range up to about .66.  And if you say 1 millimeter, it could include a range down to about 5 or 10 percent lower than 1 millimeter.

THE COURT:  Right.  But I'm saying here, if the choice is between .95 and .63, or whatever this chart seems to suggest, the difference between -- why not choose the higher number?  I mean, what tells one of skill in the art that the term "low profile" means that it's .6 as opposed to .9?

MR. LEIBOWITZ:  So again, this is what -- this is based on Mr. Dennison's testimony, that that's what the person of ordinary skill in the art would know.  And again, reflected in that 40 percent roughly decrease from the 1.625-inch drive to the 1-inch drive.  And again, shown here.

And, and in addition, Your Honor --

THE COURT:  So it's almost taking a percentage, a percentage approach, because the "low profile," as that term was used to HTDs, was about a 40 percent drop.  One could assume some proportionality here?

MR. LEIBOWITZ:  That's -- exactly, Your Honor.  That's what Mr. Dennison testified to at his deposition.

And in addition, you also have the other references, those

other 1-inch -- excuse me, 1-millimeter references.  Including Braunheim, which as Your Honor pointed out, and as we said, the three time the value in Braunheim gets you to 1.044-millimeter for the conventional.

**THE COURT:**  For the conventional.  So the question that your opponent has raised:  Well, then, how much smaller, thinner than conventional is low profile?

**MR. LEIBOWITZ:**  Correct, so what Mr. Dennison explains is that's what one of ordinary skill in the art would know.  You have these categories.  You have the conventional category which is about a millimeter or higher.  And then you had the low-profile category, which was about .6 millimeters or lower.

**THE COURT:**  (Inaudible)

**MR. LEIBOWITZ:**  And then in between, you had kind of a no-man's land.  Because you didn't have a lot of -- you didn't have drives that were looking for profiles of plates in that in-between.

And one thing we did, Your Honor --

**THE COURT:**  Now is there evidence of that, that in fact, in the field, there wasn't a lot in that no-man's-land?

**MR. LEIBOWITZ:**  So one thing we did, Your Honor, is because they -- in their reply, defendants kind of, you know, pointed out some of the plates that were in our infringement contentions and in their invalidity contentions.

So one of the things we did, Your Honor, we went back and

took every base plate that is of record in this case.  So every drawing that we had, everything they produced to us, everything, Braunheim, everything that's in the Bogy declaration, everything that's in the Dennison declaration, and we did kind of a scatter plot of what those profiles look like.

And that's at Slide 20 in the packet.  We put it up on the screen.

(Document displayed)

**MR. LEIBOWITZ:**  And so if you see here, we have put exactly what Mr. Dennison was talking about.

First of all, there's -- what this includes is the end here. It's 374 base plates between the infringement contentions, between what they produced to us, and IPT, APT's own plates.

And you can see there's a cluster of plates at around 1 millimeter.  Then there is -- those are the conventional plates.

**THE COURT:**  Everything that's been referred to, whether it's back in 1988 or --

**MR. LEIBOWITZ:**  So actually, we did one by date as well, Your Honor.  The next slide has them out by date.

(Document displayed)

**MR. LEIBOWITZ:**  So, you can see the conventional plates are mostly in the early -- late eighties, early nineties.  And there are a couple that -- even as late as 1996, where someone wanted a conventional plate for something.  It might have been a very

high-storage drive.  And that conventional plate was used in that application.  But over the last 20 years, you have these low-profile plates that are all about .6 millimeters or lower.

And there's not a whole lot in between.  The one that's at .8, that one red dot at .8 that's in that kind of no-man's land, that's the one plate that is in NHK's invalidity contentions, which Mr. Dennison says would not be thought of as low profile, and would not be thought of as conventional.  It's kind of in this no-man's-land between the low profile and conventional.

**THE COURT:**  What slide number is this?

**MR. LEIBOWITZ:**  That's 20 and 21, Your Honor.  21 is the by date, and 20 is just the scatter plot.

And we didn't have -- the reason why there are fewer plates in Slide 21 is there weren't -- we didn't have dates for every plate.  Some plates had engineering drawings that were undated. So the end here is 346 plates.

But you can certainly see this -- this -- you know, what Mr. Dennison refers to as this step function decrease between conventional plates and low-profile plates.

And you know, if we had gone earlier in time, there might be more conventional plates here.  But that's where we -- you can see this cluster.

And in fact, if you look at the low-profile plates, it's not actually the case that the profile has continuously gone down. It's basically remained similar for the past 20 years.  There

might be a couple lower, you know, and a couple higher, depending on where you are in time.  But overall, you had this big decrease, and then that's where we've been.

So, and so this includes, again, everything that's -- you know, that they've given us and everything that we've produced in the case.

Now, Your Honor, also --

**THE COURT:**  So the -- so the survey evidence or the evidence of actual things that were in the domain or in the field, would show a grouping.  And, and that apart from the step chart that you had, it does show clusters.

I assume if you went back in time, you'd see a whole lot more dots above that 1.0 and larger.

**MR. LEIBOWITZ:**  That's what I would assume, too Your, Honor, but that they just weren't produced in this case.

But even so, Your Honor, if that's true, that just shows that what the conventional plates were as of that point in time in the late eighties, early nineties, when the low -- in the low-profiles drives were first introduced.

And that's really what's important, because again, it's the connection between low-profile drives and low-profile components including low-profile base plates that have the industry designation.

And in fact, if we wind up with, you know, even lower drives at some point -- maybe we have drives that are, you know,

postage stamp size, right -- maybe those -- maybe they don't have base plates, I don't know.  But if they do, and those base plates are way lower, maybe there will be a new category.  Maybe it'll be called, you know, super-low profile.  I don't know. But it might be another category designation.  It won't change the fact of what "low profile" referred to in the industry.

**THE COURT:**  Let me ask, if I were to reach the conclusion as you would like me to reach, that there's not a problem with indefiniteness here, in terms of actually construing then the term, is it the Court's job then to come up with an actual number?

**MR. LEIBOWITZ:**  So, we don't think Your Honor has to do that.  We think, as we said in claims construction, Your Honor, that the term "low profile" can have its plain and ordinary meaning.

If Your Honor is inclined to give it any construction, we think the construction that would be appropriate is not a quantitative one, but is the qualitative one of -- it's a low-profile base plate is a base plate designed to be suitable for use in a low-profile hard drive.  Because that's the way the industry was using the term.

It wasn't using it to compare Plate A at .5 and say:  Well, that's low profile compared to .6, but not low profile compared to .4.

That's -- there's no evidence in their sort of fundamental

premise that you can only determine if a drive is low profile by comparing it to another drive.  That's not the way the industry used these terms.

It was a category -- it was a term of category that -- and we see that not only in the evidence that we just went through, but we also see that in Braunheim.  Right?  Braunheim, again, is designed -- is directed to an invention of a low-profile base plate.

The profile in Braunheim, then, of the plate, is actually lower that the profile in the '841 patent.  But that doesn't mean that the examiner looked at the '841 patent and said:  What do you mean, that's not low profile?

Yes, it was, because it was still in the category of low profile.

And then just one quick thing, Your Honor, on this one point that counsel mentioned about the typical conventional and typical low profile and the table in the '841 patent -- because that's where this motion started.

And their opening brief was all about this intrinsic record, and how the intrinsic record they said is muddled because you can't tell what it means.  Right?

Their expert, Dr. Bogy, admitted at deposition that he would recognize and one of ordinary skill in the art would recognize that the table in the patent was not referring to a conventional base plate.  But that what he would recognize and what one of

ordinary skill in the art would recognize is that the table in the '841 patent was referring to two low-profile base plates. One low-profile base plate that met the rest of the claims, the geometry metric equation in the claims, and one prior-art low-profile base plate, not a conventional one, but a prior-art low-profile base plate that did not meet the rest of the claim -- equation that is in the rest of the claim.

And we have the excerpt from Dr. Bogy's deposition at Page -- Slide 28.

(Document displayed)

**MR. LEIBOWITZ:**  And so -- the question.  So rather than -- referring to Table 1 of the '841 patent.  (As read)

"So, rather than assuming that the base plate in the left column, which is roughly the same profile as the one in the right --"

**"ANSWER:**  Yeah.

**"QUESTION:**  -- is a conventional base plate, wouldn't one of ordinary skill in the art recognize that plate, the one on the left, to also be a low profile plate, but one with other dimensions that don't meet the geometry metric value of the invention's claims as, you can see from the bottom row of the table?"

Objection to form.

**"THE WITNESS:**  I -- I -- I believe that since the

prior art dimension base plate has the same profile as the invention base plate, and the invention base plate has to be considered a low-profile base plate, that the prior-art base plate that's listed here would also have to be considered a low-profile base plate.  And that there are other dimensions -- even though those dimensions are the same, there are other dimensions here which are not the same and, that if one uses those dimensions in the metric of the claim, it would not satisfy the metric of the claim."

So this whole premise that the patent is inconsistent in some way because that table has conventional and low profile at the same height is just incorrect.  As their expert admitted, those are both low-profile plates.

**THE COURT:**  And the term "typical prior-art dimension," not conventional.

**MR. LEIBOWITZ:**  Correct.  Typical prior art -- and this is again, unfortunately, at claim construction, there was a misspeak as well, because it did mean -- there is a -- terms of art here in terms of using the word "conventional."

But "typical prior art" does not mean in this sense "typical conventional."  Typical prior art was another low profile plate that was typical, but it did not meet the equation, the geometry metric equation of the claims.

It had other -- although the profile of that plate is

similar, basically is the same as the profile of the inventive plate, so it would both be recognized as low profile.

**THE COURT:** All right. All right. Let me just get your brief response. Particularly to the scatter chart, which I found quite interesting.

**MR. KIBLAWI:** Okay, so a couple of points.

First, with respect to the chart, this is the first time we've seen this scatter chart. We haven't seen it before. As I think you've correctly identified, the majority of base plates that have been produced in this case are from the past seven years, well after the time of the patent.

Beyond that, I think if you look at that chart -- it's my first time looking at it, to be quite honest -- you see a couple of things. One, I would say that there seems to be a large number of base plates that are below .5 millimeters.

And on the '97, '98, '96 time period, I don't know why you can't consider that to be the boundary line for low profile, just as much as you could consider anything else.

On top of that, as Mr. Dennison, himself, stated, the IPT and HK products in the market are a very, very low percentage. He stated that IPT was industry lagging. He stated that Hutchinson made up about 85 percent of the base plates in the industry. None of that is reflected in this.

In fact, I think that if we were to go and take a full scatter of everything that was selectively provided by IPT below

.6 millimeters, you'd see a lot more above the .6 millimeters, because there was no categorical or generational shift from 1 millimeter to .6 millimeters.  And that's the difference between a half-height to a 1-inch hard disk drive.  That is a myth; that's a fiction.

And if I can address that point as well --

THE COURT:  Wait, wait, wait.

Supposedly, this was taken by everything that was referenced in the declarations and in this case.  Where would you get the other above .6?  Where would that come from?

MR. KIBLAWI:  Well, we didn't -- NHK did not produce all of their base plates at that time period.  They produced a very small number.

THE COURT:  Oh.  So this is not a fair sampling of the market.

MR. KIBLAWI:  Exactly.  And in fact, Mr. Dennison, himself, stated IPT is industry lagging, and that Hutchinson was the major player, 85 percent.  None of that is reflected in this scatter graph that we are seeing for the very first time today.

Beyond that, there's nothing in any piece of evidence -- this is an important point -- not a single piece of evidence suggests that a 1-millimeter base plate was used in a half-height hard disk drive.  Not one single piece of evidence.

You asked Mr. Leibowitz whether or not the three IBM patents from 1991, whether they were -- whether the 1 millimeter base

plate profile on those were presented with respect to a 1-inch hard disk drive -- sorry, a half-height hard disk drive, the 1.7-inch or whatever.

His answer was yes.

That's categorically false.

THE COURT: Who? Dennison said it was false?

MR. KIBLAWI: No, I'm saying right now, that's categorically false. The prior-art hard disk drive and the 1 millimeter base plate in that reference are not described in any way, shape or form with respect to a half-height hard disk drive.

Your question specifically was: Is the 1-millimeter base plate, that was what was used in the half-height hard disk drive.

THE COURT: And do you have -- what's your evidence that -- how were these various 1 millimeter, quote, conventional, unquote, base plates, what were they used in?

MR. KIBLAWI: If you can look at those -- ao first, my first point is, again, not a single piece of evidence on the record connects the 1 millimeter base plate to a half-height hard disk drive. Not one.

His statement that this Takagi reference -- Exhibit C to our reply, also cited in his opposition -- shows a 1 millimeter for a half-height inch -- for a half-height hard disk drive --

THE COURT: Yeah, that was a one where he says they were trying to be inventive.

**MR. KIBLAWI:**  Right.  That's categorically false.  He presented the Figures 6 and 7, one of them is labeled "the invention"; Figure 7 is labeled "prior art."  They both have the same profile base plate.

However, the Figure 7 base plate for the prior art in 1991, that -- filed by IBM, is not with reference to a half-eight inch hard disk drive.  It's not even with reference to a 1-nch hard disk drive.  It's with reference to a low-profile hard disk drive that's .67 inches.  Because by then, things have moved along.

Now, I present to you the evidence of that.

**THE COURT:**  So you're talking about, is this the '860, '981 -- the '982 and the '802?

**MR. KIBLAWI:**  That's right.

**THE COURT:**  And you're saying those are used in reference to a very-low-profile HTD.

**MR. KIBLAWI:**  Well, the words they use in the patent are low-profile (Indicating quotation marks) HTD.  But that's a .67-inch and a .68-inch.  That's right.

And if you have the '860 patent in front of you, you will see that in the background art in Column 2, the -- when it's describing the prior art at Line 55, you'll see that the prior-art hard disk drive it's describing is .68 inches.

**THE COURT:**  All right.  Which, this is Column 2?

**MR. KIBLAWI:**  Sorry, I apologize.  Column 1.

**THE COURT:**  Column 1.

**MR. KIBLAWI:**  Lines 55 -- the paragraph starting at Line 55. So you will see that is with reference to a prior-art .68-inch hard disk drive.  There's no reference whatsoever to a half-height hard disk drive in this patent, whether it be in the description of the invention or in the background art.

Now, if you turn to the invention, Column 3, going down to Line 53, that paragraph, for example, it states that (As read):

> "The present invention provides a low-profile or low-height disk drive apparatus."

It continues at Line 58:

> "The present invention provides an improved suspension actuator assembly having a height less than presently known suspension actuator assembly."

And you will see, that's the comparison between Figures 6 and 7.  They have the prior-art suspension assembly, Figure 7, and the invention, Figure 6.

So as Mr. Leibowitz correctly stated, by rearranging the, I believe, the configuration of the components, they are able to reduce the height.  That's the invention.  Reduce the height.

So if you turn to Column 8 where we actually discuss Figures 6 and 7, you will see in Line 40, Line 38, they talk about the two figures, the prior art and the invention.

And Line 40, it discusses that -- that a disk drive with one disk in accordance with the first embodiment can reduce the

height of the housing at least by 1 millimeter, and the height of the housing with two disks at least by .5 millimeters, in comparison with the prior art.

So you see, by their invention, they can reduce the height by 1 millimeter for a one-platter, and by .5 millimeters for a two-platter.

Now if you turn, finally, just to wrap up this point --

THE COURT:  This is the Takagi.

MR. KIBLAWI:  That's right.

THE COURT:  And I already understood that this was an attempt to use a 1-millimeter, at least it was represented to me, in a low-profile hard disk drive setting.

MR. KIBLAWI:  .67 inches and lower.

THE COURT:  Right.

MR. KIBLAWI:  And comparison point for the prior art in that one is a .68-inch hard disk drive.

THE COURT:  What I want to know is other than this one, are there other examples -- his other examples of 1-millimeter -- there were other examples of 1-millimeter, what he called conventional height, being used in half-height.

MR. KIBLAWI:  Not a single example in the record of a 1-millimeter base plate profile being used in anything but a point -- a low-profile, a lower-profile, 1-inch -- not even 1-inch.

Here we are seeing .68 inches, and the invention here is

actually reducing the .68-inch to a .67-inch, using the prior-art 1-millimeter base plate profile that was used for the .68-inch.

So not only is there not a single example, nothing in the record suggesting a 1-millimeter is some sort of magic number for a half-height base plate.  What the record does show is that years after the 1-inch hard disk drive was introduced, IBM, a leader in the market according to Mr. Dennison, was trying to reduce the hard disk drive height by simply 1 millimeter.  One millimeter.

And to do that, I mean, to reduce it by 1 millimeter, it's obviously going take the lowest profile it has at the time, 1 millimeter base plate, and rearrange things in order to reduce the hard disk drive height from .68 inches to .67 inches.

That's summarized in Column 11 of Takagi.  That, that a disk drive apparatus with one disk drive having an overall height of 12.7 millimeters is attained, and with two disks having an overall height of 17 millimeters is attained.

And that is, again, in comparison to the prior art described in Column 1 as a .68-inch.  And as we see again from Column 8, that's --

**THE COURT:**  Let me get the counterpoint while you're up here on that.

Where is the hard evidence that the 1 millimeter that has been referred to as a conventional plate thickness being used in

association with the half-height or a non-low profile HTD?

**MR. LEIBOWITZ:**  Right.  So Your Honor, I think, I think, I think the dearth of evidence -- I think we'd agree with counsel, there isn't a lot of evidence on this, either way, other than what Mr. Dennison testified to in his declaration.

As I pointed out, Your Honor, in Paragraph 30 of his declaration, he says that a conventional base plate for use in the older form factor HDDs would typically have a total z-height around 1 millimeter or greater.

And then he discusses the literature, and things that he found about base plates having a height of -- conventional plates having a height of 1 millimeter.

And frankly, this issue of whether a 1-millimeter plate was used in half-height drives as opposed to whether low-profile plates were used in low-profile drives, right, that's an issue that was -- was really not a substantive issue before this.

In other words, Dr. Bogy, their expert, doesn't take the contrary view.  He was never asked the question.  There's no contrary evidence that it wasn't.

**THE COURT:**  I understand your narrative to be there is a connection.  That is, a shrinkage of the HTD resulted in a shrinkage of the components, including the base mount, and that's why you have this scattered dot and all this sort of stuff.

And he says that in Paragraph 30.  But Paragraph 31B, C and

D don't seem to support that, because those were examples of conventional 1-millimeter plates, base plates, being used in low-profile HTDs.

**MR. LEIBOWITZ:**  Correct.  Those are examples of what the -- what conventional plates were at the time, as Mr. Dennison says, of 1 millimeter or greater.

And he also refers to other engineering drawings of other base plates as he goes through Paragraph 32, referring to plates that had profiles of 1 millimeter or higher.

And the -- this idea that there's -- the connection that Mr. Dennison was -- as he was explaining it, was that industry use of the term, "low profile," because that's the term in the claim in the patent, is "low profile."  Not "conventional."

And so, what we have here is, you know, it's defendants's motion.  And frankly, it's a motion they brought after Your Honor said that the record at the time of claim construction, you know, wasn't fully developed on this.  Right?

And rather than sort of engage in the full scope of expert discovery, they brought this motion early.  And, and they didn't -- their expert doesn't say anything about this.

**THE COURT:**  Still, still, "low profile," you, yourself, said the definition of "low-profile mount" should be something that's designed to work in a low-profile HTD.

And that went along with this narrative that:  Well, with one came the other.  And that's why the timeline seemed to work,

and therefore somebody skilled in the arts at the time would understand that sort of commensurate or largely concomitant with the shrinkage of the size of the HTD, you had a -- now a low-profile base mount.

Bu maybe this suggests that the correlation is not so clear. That is, you could have a downsizing of the HTD without changing -- without deviating from the conventional thickness of 1 millimeter, if that's conventional, of the mount.

**MR. LEIBOWITZ:**  Correct, Your Honor.

I think that's what these IBM patents -- that's what Mr. Dennison, as he explains about these IBM patents, which was an attempt to use a -- conventional base plates in, you know, in a different way, in an inventive way, so that they could fit in low-profile drives.

And I don't think I called those "half-height drives."

**THE COURT:**  Let me ask this question.  Do you have other examples other than the Takagi series of patents where a 1-millimeter base plate was used in a low profile HTD, meaning 1 inch or thinner?

**MR. KIBLAWI:**  One millimeter?  I think the Takagi references are -- sufficiently disclose that.  And in fact, again, I want to emphasize this point, this 1 millimeter in these three IBM patents were not for even a 1-inch hard disk drive.  They were for substantially lower.

**THE COURT:**  I understand that.

**MR. KIBLAWI:**  Now, beyond that, we have -- you know, you referenced the other -- these base plates that are listed in Paragraph 32.

Mr. Dennison himself, testified, that he has no -- he had no idea.  He did not know definitively whether those base plates went in 1-inch hard disk drives or 1/2-inch hard disk drives.  He started from the conclusion of 1 millimeter, and then went back and started identifying things as being conventional or low profile, based on that conclusion.

There's nothing in these drawings (Indicating) that suggest they were used in a half-height or greater-than-1-inch hard disk drive.  And the evidence before us of patents that IBM filed and continued to file throughout the nineties show that in order to even just decrease the hard disk drive by .1 millimeter -- sorry, by 1 millimeter, by .01 inches, again, if they could have just used a .6-millimeter base plate, they could have reduced it even more than that.

But just to reduce it by .1 millimeter, which was the goal that invention, they had to rearrange parts.  One millimeter in 1991 was novel, according to the IBM patents.  It was inventive and.  It resulted in inventive low-profile base plates much lower than a 1-inch hard disk drive.  Nothing in the records suggests that 1 millimeter was used for half-height -- was a basis for half-height.

And beyond that, Mr. Dennison, himself, testified that by

definition, by definition, quote-unquote, by definition, it's low profile if it fits in a 1-inch hard disk drive.

We see 1 millimeters in lower than 1-inch hard disk drive; we see evidence of record as well showing .8 millimeters, .7 millimeters, et cetera, et cetera.  There's just no definitiveness to this.  It's all over the place.

**THE COURT:**  All right.  I'm going to take this motion under submission.

Thank you.

(Proceedings concluded)

## CERTIFICATE OF REPORTER

I, BELLE BALL, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*Belle Ball*

_____
/s/ Belle Ball

Belle Ball, CSR 8785, CRR, RDR

Sunday, December 9, 2018