UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTRI-PLEX TECHNOLOGIES, INC., <br> Plaintiff, <br> v. <br> NHK INTERNATIONAL CORPORATION, et al., <br> Defendants. | Case No.17-cv-01097-EMC (EDL) <br><br> **REPORT AND RECOMMENDING REGARDING DEFENDANTS' MOTION FOR LEAVE TO AMEND THE INVALIDITY CONTENTIONS** <br><br> Re: Dkt. No. 141 |

Before the Court is Defendants NHK International Corp., NHK Spring Co., Ltd., Ogaki Seiko Co. Ltd., and Seiko High Tec Corp.'s (together, "Defendants") motion for leave to amend their invalidity contentions in this patent infringement case. The presiding judge assigned this motion to the undersigned for a report and recommendation. Defendants argue that amendment is proper based on material prior art identified in recent discovery and recent discovery of information from a third party. Plaintiff Intri-Plex Technologies, Inc. ("Plaintiff" or "IPT") opposes the motion.

For the following reasons, the Court recommends GRANTING the motion to permit amendment of Defendants' invalidity contentions with respect to HTI 0126882, ITP 15082-05, HTI 0126882/IPT 15053-02, IPT 15082-03 (Rev. D), IPT 15038-03, IPT 15098-01, IPT 15098-02, IPT 15098-03, IPT 15072-24, IPT 15120-03, and ITP 15082-05 in view of the Frater and Aoyagi patents.

I. **FACTUAL BACKGROUND**

This brief summary of facts is drawn from Plaintiff's complaint. Plaintiff is the owner of U.S. Patent No. 6,183,841, titled "Optimized Low Profile Swage Mount Base Plate Attachment of Assembly for Hard Disk Drive" (the "'841 Patent" or "Patent-in-Suit"). Compl., ¶¶ 1, 16. As the

name of the Patent-in-Suit suggests, the technology at issue pertains to swage mounts for attaching a suspension assembly to an actuator arm in hard disk drives ("HDDs"). Id., ¶ 3; Joshi Decl., ¶ 3, Ex. 2 (Claim 1 of the '841 Patent describes "[a]n optimized low profile base plate for attachment of a suspension assembly to an actuator arm in a hard disk drive . . . "). Specifically, the patent concerns a component of the HDDs that is part of a larger structure that is used to help write data to and read data from the HDDs. Compl., ¶ 18.

Plaintiff is one of the largest manufacturers of swage mounts in the world and owns more than 25 patents world-wide related to swage mounts. Id., ¶ 19. NHK International Corp. and NHK Spring Co., Ltd. (together, "NHK") manufacture and supply suspension assemblies for use in HDDs. Id., ¶ 20. Certain suspension assemblies that NHK manufactures and supplies incorporate swage mounts that utilize the patented technology in the Patent-in-Suit. Id. Sometimes NHK sources infringing swage mounts from Ogaki Seiko Co. Ltd. and Seiko High Tech Corp. Id., ¶ 21. NHK supplies suspension assemblies utilizing infringing swage mounts to third-party HDD manufacturers, including HGST Inc., which has a principal place of business in San Jose, California. Id., ¶¶ 13, 22. Third-party manufacturers such as HGST Inc. incorporate NHK's suspension assemblies utilizing infringing swage mounts into HDD products that are offered for sale and sold in the global market, including in the United States. Id., ¶ 23.

## II. PROCEDURAL HISTORY

Plaintiff filed suit against Defendants on March 3, 2017 alleging infringing of the '841 Patent. Defendants answered the complaint on June 7, 2017. The court issued its claim construction order on February 1, 2018.

On April 2, 2018, Plaintiff filed a motion for leave to amend its disclosure of asserted claims and infringement contentions to add more of its products to demonstrate commercial success and nonobviousness, include new information obtained from Defendants in discovery, and make minor edits. Defendants did not oppose IPT's motion because "IPT's counsel previously notified Defendants that it intended to add additional asserted claims and accused products." Dkt. No. 95 at 1. On May 11, 2018, the court granted Plaintiff's motion.

On April 10, 2018, Defendants moved for summary judgment on the issue of invalidity

based on indefiniteness. Plaintiff opposed the motion. On June 18, 2018, the court denied the motion for summary judgment.

### III. LEGAL STANDARD

Patent Local Rule 3-6 governs the amendment of validity contentions and provides that amendment "may be made only by order of the Court upon a timely showing of good cause." Patent L.R. 3-6. Further, it provides a "[n]on-exhaustive" list of examples of "circumstances that may, absent undue prejudice to the non-moving party, support a finding of good cause," including:

> (a) A claim construction by the Court different from that proposed by the party seeking amendment;
> (b) Recent discovery of material, prior art despite earlier diligent search; and
> (c) Recent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions.

Id.

"The local patent rules in the Northern District of California . . . requir[e] both the plaintiff and the defendant in patent cases to provide early notice of their infringement and invalidity contentions, and to proceed with diligence in amending those contentions when new information comes to light in the course of discovery. The rules thus seek to balance the right to develop new information in discovery with the need for certainty as to the legal theories." O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc., 467 F.3d 1355, 1365-66 (Fed. Cir. 2006). "In contrast to the more liberal policy for amending pleadings, 'the philosophy behind amending claim charts is decidedly conservative, and designed to prevent the shifting sands approach to claim construction." Verinata Health, Inc. v. Ariosa Diagnostics, Inc., 236 F. Supp. 3d 1110, 1113 (N.D. Cal. 2017) (quoting LG Elecs. Inc. v. Q-Lity Computer Inc., 211 F.R.D. 360, 367 (N.D. Cal. 2002)).

The party seeking to amend its contentions bears the burden of establishing good cause. Id. (citing Karl Storz Endoscopy-Am. v. Stryker Corp., 2016 WL 7386136, at *2 (N.D. Cal. Dec. 21, 2016)). When assessing whether a party has met its burden to show that good cause exists, the court "'considers first whether the moving party was diligent in amending its contentions and then whether the non-moving party would suffer prejudice if the motion to amend were granted.'" Duraflame, Inc. v. Hearthmark, LLC, 2012 WL 4097741, at *4 (N.D. Cal. Sept. 17, 2012)

(quoting Acer, Inc. v. Tech. Properties Ltd., 2010 WL 3618687, at *3 (N.D. Cal. Sept. 10, 2010)). "Prejudice is typically found when amending contentions stand to disrupt the case schedule or other court orders." Karl Storz Endoscopy-Am., 2016 WL 7386136, at *3. However, when the party seeking to amend its contentions cannot show diligence, there is "no need to consider the question of prejudice." O2 Micro, 467 F.3d at 1368.

**IV. DISCUSSION**

Defendants seek to amend their invalidity contentions to include invalidity grounds based on: (1) recently discovered prior art base plate products made and sold by Plaintiff (IPT 15082-05, IPT 15082-03 (Rev. D), IPT 15038-03, IPT 15098-01, IPT 15098-02, IPT 15098-03, IPT 15072-24, IPT 15120-03); (2) recent discovery regarding subject matter derived from a third party (Hutchinson Technology Inc. ("HTI") Base Plate Drawing No. 0126882, referred to as "HTI 0126882"); and (3) recently discovered documents that IPT received from HTI two years before filing the patent-in-suit (the "1994 HTI documents") regarding HTI 0126882/IPT 15053-02.[1] One specific invalidity ground Defendants seek to add is obviousness over IPT 15082-05 in view of the Frater and Aoyagi patents.

**A. Defendants' Discovery of the Prior Art**

Defendants served their original invalidity contentions on August 38, 2017. Kiblawi Decl., ¶ 2. The original invalidity contentions included prior art obtained after a search, including an IPT base plate product (IPT Swage Mount Model No. 15030-02) that they discovered by ordering and searching the file history of a patent different from the Patent-in-Suit. Id. The original invalidity contentions also asserted that the claims of the Patent-in-Suit were invalid in view of certain subject matter derived from "HTI" and "reserve[d] the right to supplement their disclosure regarding the circumstances under which the claimed invention was derived." Id.

After serving their original invalidity contentions, Defendants served their first set of requests for production on Plaintiff on December 27, 2017, and requested "[a]ll Documents, Communications, and Things describing, referring to, relating to, or constituting Prior Art to the

---

[1] According to Defendants, Plaintiff does not object to the amendment of the invalidity contentions to incorporate HTI 0126882/IPT 15053-02.

4

Patent-in-Suit (1) known to IPT, (2) that is or was in IPT's possession, custody, or control, and/or (3) that was identified to IPT by any third party, including but not limited to references identified in other negotiations, litigations, pre-filing investigations, or prosecution, even if you dispute that the material constitutes or discloses Prior Art." Id., ¶ 3. IPT responded on February 9, 2018, by stating that: " . . . IPT refers Defendants to information that is publicly available from the United States Patent and Trademark Office regarding the prosecution history of the Patent-In-Suit and information cited therein. IPT is not otherwise aware of any non-privileged, non-cumulative, and relevant documents responsive to this Request." Id., ¶ 4. IPT has not amended or supplemented this response. Id.

On April 11, 2018, IPT produced over 2,000 pages of documents, including a number of prior art materials in IPT's possession. Id., ¶ 5. Among these materials was a technical print for HTI 0126882, dated October 3, 1995. Id. Defendants served amended invalidity contentions on IPT on April 20, 2018. Joshi Decl., ¶ 5. The amended invalidity contentions did not add any new prior art references and IPT did not oppose the amendment. Opp. at 3.

On August 22, 2018, IPT confirmed in response to a discovery request regarding HTI 0126882 that IPT obtained and reviewed the HTI drawing no later than November 15, 1995. Kiblawi Decl., ¶ 11. Prior to receiving the confirmation of that date, on July 5, 2018, Defendants' counsel wrote to IPT's counsel that Defendants intended to seek leave to amend their Invalidity Contentions to incorporate, among other specified prior art, HTI 0126882 "once you have confirmed that your production is complete." Id., ¶ 8, Ex. 2. On September 14, 2018, IPT produced another round of documents, which included a technical print for IPT 15082-05. Id., ¶ 13. IPT produced yet another round of documents on November 9, 2018 after filing its opposition to Defendants' motion for leave to amend their invalidity contentions that included documents relating to several additional prior art products (HTI 0126882/IPT 15053-02, IPT 15082-03 (Rev. D), IPT 15038-03, IPT 15098-01, IPT 15098-02, IPT 15098-03, IPT 15072-24, IPT 15120-03). Kiblawi Reply Decl., ¶¶ 2 & 5, Ex. 3.

Numerous times during the course of this litigation, Defendants notified Plaintiff that they reserved their right to seek leave to amend the invalidity contentions based on any prior art

5

discovered in IPT's discovery responses. See Dkt. No. 95 at 1 n.1 (in their response to Plaintiff's motion for leave to amend their asserted claims and infringement contentions, Defendants stated that they "reserve[d] the right to seek leave to further amend their invalidity contentions based on any prior art discovered in IPT's recent [April 11, 2018] production" of "over 2000 pages of documents"); Kiblawi Decl., ¶ 7, Ex. 1 (in a June 22, 2018 letter to Plaintiff's counsel, Defendants stated that they "reserve the right to supplement their invalidity contentions to include any prior art obtained or learned from IPT's supplementations to its responses to Defendants' interrogatories and production requests."); Dkt. No. 134 (in a September 12, 2018 joint letter to the Court, Defendants reiterated their intent to amend their invalidity contentions once IPT's production of prior art materials was complete); Kiblawi Decl., ¶ 14, Ex. 3 (in an email dated October 4, 2018, Defendants' attorney wrote to IPT's counsel that "[w]hile your production of documents with respect to requested prior art products is still ongoing, we nonetheless will proceed now with our intent to seek leave to amend our invalidity contentions with respect to [IPT 15082-05 and HTI 0126882].")

Defendants served their proposed second amended invalidity contentions on Plaintiff on October 9, 2018. Joshi Decl., ¶ 6. As of the date of Defendants' motion (October 25, 2018), Plaintiff's production of prior art materials was still not complete, as evidenced by Plaintiff's further production on November 9, 2018. Kiblawi Decl., ¶ 9.

**B. Analysis**

**1. Defendants' Diligence**

The first step in the analysis of whether to permit amendment of invalidity contentions is to consider whether Defendants were diligent in amending their contentions. Defendants contend that they have acted diligently with respect to each of the prior art references they seek to add to their invalidity contentions, although different reasons attach to some of the documents. The overarching explanation, however, is that Defendants were diligent in seeking amendment because Plaintiff initially responded to Defendants' document request for prior art that they were not in possession of any prior art that is not otherwise publicly available through the Patent and Trademark Office, but they made a plodding production of the prior art that is at issue in this

motion that extended until after this motion was filed.

Defendants' diligence cannot be subject to reasonable question as to the eight prior art products (HTI 0126882/IPT 15053-02, IPT 15082-03 (Rev. D), IPT 15038-03, IPT 15098-01, IPT 15098-02, IPT 15098-03, IPT 15072-24, IPT 15120-03) that Plaintiff disclosed only as of November 9, 2018. Defendants first served discovery requests on Plaintiff that were directed toward prior art as early as December 2017, yet Plaintiff failed to produce the documents relating to these products until nearly a year later. After receiving the November 9, 2018 production, Defendants informed Plaintiff of their intention to incorporate these products in their amended invalidity contentions only one day later. Kiblawi Reply Decl., ¶ 5.

With respect to IPT 15082-05, Defendants only obtained the base plate for this product from Plaintiff's September 14, 2018 production. This was the first time that Defendants came into possession of the product's dimensions. Before that time, they could not conduct an invalidity analysis regarding this base plate without knowledge of its dimensions because the asserted claims are directed to a particular dimensional relationship. Further, it is undisputed that the product's dimensions could not be obtained elsewhere because the technical print is not public and the product is decades old and not publicly available for sale. Plaintiff has not made any arguments suggesting that Defendants did not diligently seek to amend their contentions to reference IPT 15082-05, but instead contend that there is no good cause for asserting a purportedly new theory based on manufacturing tolerances, as discussed further below.

As to the third-party product HTI 0126882, Defendants first learned of this product from a single document included in Plaintiff's 2000-page April 11, 2018 document production. Although they did not move for leave to amend as soon as they learned of HTI 0126882, Defendants provided notice to Plaintiff of their intent to seek leave to amend their invalidity contentions regarding the April 11, 2018 production in general and as to HTI 0126882 specifically in June and July 2018. Id., ¶¶ 7-8. Defendants also served a third-party subpoena on HTI with discovery requests relating to HTI 0126882 on July 23, 2018. Id., ¶ 10. It was not until August 22, 2018 that Defendants finally learned of the date that IPT obtained and reviewed the HTI drawing in IPT's response to a discovery request regarding HTI 0126882. Id., ¶ 11. While Defendants

1 contend that they only received information in August 2018 about when Plaintiff received the
2 technical print for HTI 0126882, Plaintiff responds that the face of the document produced to
3 Defendants contains an IPT stamp showing that it received the document on November 15, 1995
4 and so Defendants learned nothing in August 2018 that justifies their failure to seek amendment
5 sooner. Id., ¶ 11, Ex. 9.

Plaintiff stated in a discovery response dated February 9, 2018 that it was "not otherwise aware of any non-privileged, non-cumulative, and relevant documents responsive to this Request," aside from that information available with the Patent and Trademark Office. Kiblawi Decl., ¶ 4. Yet Plaintiff has since made at least two additional document productions that have disclosed multiple prior art products. As a result of these rolling productions of prior art even after Plaintiff's early statement that it was not aware of any additional prior art, Defendants' counsel "pressed IPT's counsel for these materials and confirmation as to whether the production of these materials is complete." Id., ¶ 9. Defense counsel also attempted to identify any IPT product referenced in IPT's productions and made targeted requests for the technical prints of those productions as they were identified. Id. Defendants repeatedly informed Plaintiff that they intended to seek leave to further amend their invalidity contentions once Plaintiff's prior art productions were complete, providing reference to specific prior art products along the way. Notwithstanding those representations, Plaintiff's productions and responses to prior art requests continued far into the fall of 2018. It was not unreasonable for Defendants to approach leave to amend on a comprehensive basis, rather than filing successive motions for leave to amend as Plaintiff made its rolling productions of previously unknown prior art products. See Advanced Micro Devices, Inc. v. LG Electronics, Inc., 2017 WL 732896, at *2 (N.D. Cal. Feb. 24, 2017); Fox Factory, Inc. v. SRAM, LLC, 2017 WL 4658063, at *2 (N.D. Cal. Oct. 17, 2017). Here, the six month delay between the first April 11, 2018 production and Defendants' motion was not for a lack of diligence. See Fortinet, Inc. v. Palo Alto Networks, Inc., 2010 WL 4608250, at *1 (N.D. Cal. Nov. 5, 2010) (allowing amendments to contentions six months after production of the relevant documents).

Aside from its argument that Defendants should have moved for leave to amend sooner,

Plaintiff's primary argument against amendment is that Defendants' proposed amendments belatedly attempt to inject a new theory of invalidity into the case. According to Plaintiff, this theory attempts to use manufacturing tolerances to calculate the geometry metric value, rather than the nominal (i.e., expected) values disclosed for the five dimensions claimed in the '841 Patent. These five dimensions relate to the geometry shape of the base plate and the invention optimizes these five dimensions according to a geometry metric equation that is disclosed in the patent, where the value derived from the equation must be above a certain threshold or within a certain range. See Joshi Decl., ¶ 3, Ex. 2, Claims 1 and 4. Plaintiff argues that Defendants rely on the upper range of the manufacturing tolerances instead of the nominal values because the geometry metric value using the nominal value results in values that are below 5 and outside the scope of the claims of the '841 Patent. Id., ¶ 6, Ex. 4 (Defendants' proposed second amended invalidity contentions), Appendix at 22 (using tolerances to calculate a geometry metric value of 5.135 for IPT 15082-05); id., Ex. 4 at 9 ("The HTI drawing discloses, within its shown tolerances ranges, a dimensional relationship that provides the claimed metric value (i.e., a metric value greater than 5)."). Plaintiff contends that Defendants have long been aware of technical prints disclosing manufacturing tolerances and could have asserted this theory in their original invalidity contentions that were served in August 2017 but failed to do so and, in their original invalidity contentions, only relied upon the nominal dimension values in three prior art references even though the technical prints that they relied upon showed nominal dimension values and manufacturing tolerances. Joshi Decl., ¶ 4, Ex. 3, Appendix at 6-17; id., ¶ 3 at 4:1-19; id., ¶ 2, Ex. 1 at 21; id., ¶ 8 Ex. 6; id., ¶ 7, Ex. 5. Defendants did not alter their use of nominal dimension values when they amended their invalidity contentions on April 20, 2018. Plaintiff further notes that Defendants used this same approach in their Petition for *Inter Partes* Review of the '841 Patent. Joshi Decl., ¶ 9, Ex. 7 at 47; id., ¶ 10, Ex. 8 at ¶ 76.

This argument is not convincing for at least two reasons. The first is that the invalidity analysis on which Defendants rely uses the dimensions expressly disclosed in the documents to calculate metric values that invalidate the asserted claims. Whether the invalidating dimension is disclosed as the nominal dimension or within the manufacturing tolerances for the nominal

9

dimensions is a distinction without a difference because they would still invalidate the patent. The second reason is that Plaintiff itself relied on the tolerance ranges in their opposition to Defendants' motion for summary judgment when discussing the embodiments of dimensions included in the claimed metric value formula (i.e., flange thickness and hub height).[2] Plaintiff's expert Ronald Dennison explained that:

> [T]he dependent claims show a range of flange thickness and hub height dimensions, providing further examples of base plate profiles that would be considered "low profile." Claims 3, 6, 9, and 12 set out nominal values for each base plate dimension and a range of variance above and below those nominal values. For flange thickness, the nominal value is 0.15 mm and the variance is ±0.01 mm. For hub height, the nominal value is 0.269 mm and the variance is ±0.025 mm. Adding the maximum and minimum allowable values for both dimensions yields a range of low profile base plates between 0.384 mm and 0.454 mm. See Dennison Decl. ¶ 44(c). Dr. Bogy agreed at his deposition. Bogy Depo. at 82:24-83:18 (adding the tolerances to get "almost .45 or something" and stating, unprompted, "[s]o this would be another example of what the patent would say would potentially be a low profile base plate").

See Dkt. No. 103 at 16:5-14. Through this argument, Plaintiffs appear to concede or at least entertain the theory that manufacturing tolerances are necessarily part of the "allowable values" for the dimensions.

The Court's order denying the motion for summary judgment also discussed dimensions defined by the manufacturing tolerances in describing different embodiments of the claimed invention:

> That a base plate with a height of 0.454 mm is considered low profile. This is established by one of the '841 patent's dependent claims. See '841 patent, claim 9 (using the following dimensions: base plate thickness of 0.16 mm and hub overall height of 0.294 mm, for a total of 0.454 mm); see also Bogy Depo. at 83 (discussing claim). However, as above, this information does not establish or suggest the limit of what constitutes a "low profile" base plate.

Dkt. No. 123 at 6:2-7. The Court is not persuaded that Defendants' manufacturing tolerances

---

[2] Plaintiff opposes Defendants' use of new evidence about tolerances in its reply brief on the grounds that Defendants made no mention of tolerances in their opening brief and therefore new evidence should not be considered. Considering that the "new theory" about the manufacturing tolerances was first raised in Plaintiff's opposition, it was proper for Defendants to counter that argument on reply. According to Defendants, Plaintiff did not explain the basis for its opposition to the motion for leave to amend the invalidity contentions when the parties met and conferred.

1 theory would impermissibly shift the sands under this case.

2 Defendants also dispute Plaintiff's position that it could have earlier applied the manufacturing tolerance ranges in their original invalidity contentions. Defendants persuasively argue that until IPT made its production of the IPT 15082-05 technical print, nothing in the record disclosed tolerance ranges that anticipate the claims, i.e., that included dimensions that meet the metric value formula of the claims. Rather, the three prior art references discussed in Plaintiff's opposition and contained in Defendants original invalidity contentions did not include tolerance ranges that fell within the metric value formula of the '841 Patent's claims.

Plaintiff further argues that leave to amend should be denied because it is contrary to the teachings of the '841 Patent, its prosecution history, and claim structure and, therefore, amendment would be futile. It is consistent with the more conservative approach to the amendment of contentions, in contrast to the liberal amendment of pleadings generally, to consider whether the proposed amendments would be futile. See Collaborative Agreements, LLC v. Adobe Sys. Inc., 2016 WL 1461487, at *5-7 (N.D. Cal. Apr. 14, 2016) ("[E]ven if the Court were inclined to consider prejudice, it would also have to consider whether [the] proposed amendments would be futile."). However, Defendants persuasively respond that their proposed amendments are not contrary to the teachings of the '841 Patent because they simply apply dimensions disclosed on a prior art document and apply them to the geometry metric value formula of the asserted claims to demonstrate invalidity. In any case, their argument on the merits is better directed to the presiding judge.

Plaintiff's final argument on the issue of diligence concerns Defendants' request to amend to combine IPT 15082-05 with the Frater and Aoyagi patent references. Plaintiff contends that those patents were issued in 1996 and Defendants have or could have known about these instances of prior art for years. In addition, Plaintiff notes that both patents were explicitly disclosed in connection with briefing and depositions in April and May 2018 related to Defendants' motion for summary judgment. Plaintiff also argues that Defendants' introduction of the Frater and Aoyagi patents should have been done sooner because they are using these two references in the same way that they used other references in their original invalidity contentions to argue in the proposed

11

amendment that "one of ordinary skill in the art would also have found it obvious to use a flange thickness of 0.200 mm in ITP 15082-05." Joshi Decl., ¶ 6, Ex. 4, Appendix at 25-26; cf. id., ¶ 4, Ex. 4, Appendix at 3 (the original invalidity contentions state that "the thickness of the base plate is on the order of 0.20 millimeters . . . "). Defendants confirmed at the hearing on this motion that it is the combination of the Frater and Aoyagi patents with the recently disclosed prior art ITP 15082-05 using the manufacturing tolerances that makes the patent-in-suit obvious. Having not received IPT 15082-05 until September 14, 2018, Defendants were not in a position to assert this invalidity ground sooner.

For all of these reasons, Defendants have demonstrated that they diligently searched for and sought leave to amend their contentions with new invalidity grounds that were disclosed by Plaintiff in the course of discovery.

### 2. Prejudice to IPT

Because the Court finds that Defendants acted diligently with respect to the proposed amendments, the next inquiry is whether permitting the amendment would result in undue prejudice to Plaintiff. Defendants argue that IPT would not be prejudiced because it has been on notice about Defendants' intention to amend the contentions since April 2018 based on Plaintiff's rolling production of prior art materials and its other discovery responses and, more importantly, that the grounds for the amendment were in Plaintiff's possession all along.

Plaintiff responds that Defendants' argument ignores the fact that their proposed amendments do not merely add new prior art references but are based on an entirely new theory of the '841 Patent. Plaintiff argues that prejudice would arise from allowing the amendment because all scheduled depositions have concluded and fact discovery and expert discovery close soon (February 2019 and April 2019, respectively). Moreover, Plaintiff argues that it did not have the benefit of challenging this theory in the claim construction proceedings, which concluded earlier this year.

While earlier amendment is always better, the prejudice that may arise from permitting the proposed additions to Defendants' invalidity contentions is largely mitigated by the new case schedule approved after Defendants filed the motion for leave to amend, which, according to

12

Defendants, the parties agreed to as a result of Plaintiff's November 9, 2018 document production. As to the issue that these invalidity grounds were not raised in the course of the claim construction proceedings, Plaintiff does not articulate how the prior art references Defendants seek to add would have changed those proceedings. The Court cannot apprehend any prejudice based solely on Plaintiff's conclusory argument that it exists. Moreover, the amendments are almost entirely based on Plaintiff's own documents or documents that were in Plaintiff's possession. This District's patent local rules require the early production of documents showing each disclosure or discussion of the claimed invention with a third party prior to the date of application for the patent-in-suit. See Patent L.R. 3-2(a) (require the party claiming patent infringement to produce, along with the disclosure of asserted claims and infringement contentions, the "[d]ocuments . . . sufficient to evidence each discussion with, disclosure to, or other manner of providing to a third party, or sale of or offer to sell, or any public use of, the claimed invention prior to the date of application for the patent in suit."). Plaintiff does not argue that it could not have produced these documents sooner and, indeed, it should have. Plaintiff cannot withhold these prior art documents for a year and a half into litigation and then argue, upon production, that it will be unduly prejudiced by their use. Any prejudice that is caused to Plaintiff by amending Defendants' invalidity contentions is not undue.

## V. CONCLUSION

For the reasons discussed above, the Court recommends GRANTING the motion to permit amendment of Defendants' invalidity contentions with respect to HTI 0126882, ITP 15082-05, HTI 0126882/IPT 15053-02, IPT 15082-03 (Rev. D), IPT 15038-03, IPT 15098-01, IPT 15098-02, IPT 15098-03, IPT 15072-24, IPT 15120-03, and ITP 15082-05 in view of the Frater and Aoyagi patents.

Any party may serve and file specific written objections to this recommendation within fourteen (14) days after being served with a copy. See 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); Civil Local Rule 72-3. Failure to file objections within the specified time may waive the right to appeal the District Court's order.

Dated: January 15, 2019

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge