Frank L. Bernstein (State Bar No. 189504)
SQUIRE PATTON BOGGS LLP
1801 Page Mill Road, Suite 110
Palo Alto, California 94304-1216
Telephone: (650) 843-3337
Facsimile: (650) 843-8777
frank.bernstein@squirepb.com

William H. Mandir (*Pro Hac Vice*)
John F. Rabena (*Pro Hac Vice*)
Yoshinari Kishimoto (*Pro Hac Vice*)
Fadi Kiblawi (*Pro Hac Vice*)
SUGHRUE MION, PLLC
2100 Pennsylvania Ave. NW
Washington, DC 20037
Telephone: (202) 293-7060
Facsimile: (202) 293-7860
wmandir@sughrue.com
jrabena@sughrue.com
ykishimoto@sughrue.com
fkiblawi@sughrue.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| INTRI-PLEX TECHNOLOGIES, INC.,<br><br>*Plaintiff,*<br>v.<br><br>NHK INTERNATIONAL CORP.; NHK SPRING CO., LTD.; OGAKI SEIKO CO., LTD.; and SEIKO HIGH TEC CORP.,<br><br>*Defendants.* | Civil Action No. 3:17-cv-01097-EMC (EDL)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SANCTIONS PURSUANT TO CIVIL L.R. 37-4**<br><br>Hearing Date:  July 2, 2019<br>Hearing Time:  9:00 a.m.<br>Courtroom E, 15th Floor<br>Honorable Judge Elizabeth D. Laporte |

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ................................................................................................1

RELIEF REQUESTED .........................................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................................2

I.   INTRODUCTION ....................................................................................................................2

II.  SUMMARY OF RELEVANT LAW ......................................................................................3

III. ARGUMENT ............................................................................................................................3

    A.   Sanctions in the Form of Cost Relief are Mandated by IPT's Discovery Misconduct ..............................................................................................3

    B.   Additional Sanctions are Warranted by IPT's Willful Discovery Misconduct ..............................................................................................5

IV.  CONCLUSION .......................................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Malone v. United States Postal Service*, 833 F.2d 128 (9th Cir. 1987) ................................................. 9

*Sanchez v. Rodriguez*, 298 F.R.D. 460 (C.D. Cal. 2014) ............................................................... 9, 10

*United Constr. Prod., Inc. v. Tile Tech, Inc.*, 843 F.3d 1363 (Fed. Cir. 2016) ..................................... 9

**Rules**

Civil L.R. 37-4 ................................................................................................................... 1, 5, 11

Fed. R. Civ. P. 26(e) ................................................................................................................... 4

Fed. R. Civ. P. 37(b) ........................................................................................................... passim

Fed. R. Civ. P. 37(c) ........................................................................................................ 1, 3, 5, 11

Patent L.R. 3-2(a) .................................................................................................................. 2, 3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on July 2, 2019, at 9:00 a.m., in Courtroom E, United States District Court for the Northern District of California, Phillip Burton Federal Building & United States Courthouse, before the Honorable Judge Laporte, Defendants NHK International Corp., NHK Spring Co., Ltd., Ogaki Seiko Co. Ltd., and Seiko High Tec Corp. (collectively, "Defendants") shall and hereby do move for an order granting this Motion for Sanctions.

Defendants' Motion for Sanctions is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities below, the Declaration of Fadi N. Kiblawi ("Kiblawi Decl."), and exhibits attached thereto, and other written or oral argument as may be presented at or before the time this motion is taken under submission by the Court.

**RELIEF REQUESTED**

Pursuant to Civil L.R. 37-4, Fed. R. Civ. P. 37(b)(2)(C) and Fed. R. Civ. P. 37(c)(1)(A), Defendants respectfully request the Court grant their motion for sanctions of no less than $12,757.96 in repeat deposition expenses that were otherwise unnecessary but for the discovery misconduct of Plaintiff Intri-Plex Technologies, Inc. ("Plaintiff" or "IPT"). Further, in view of IPT's bad faith and willfulness with respect to its discovery misconduct, Defendants respectfully request that the Court exercise its discretion pursuant to Fed. R. Civ. P. 37(c)(1)(C) and consider additional sanctions as the Court deems appropriate, including any of those listed in Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi).

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The Court has already ruled that IPT was obligated (but failed) to produce, ***much earlier in the case***, its prior art documents that resulted in repeat depositions of the inventors of the patent in suit, U.S. Patent No. 6,183,841 ("the '841 Patent").  In other words, IPT's discovery misconduct is established and well-documented in this case:

> This District's patent local rules require the early production of documents showing each disclosure or discussion of the claimed invention with a third party prior to the date of application for the patent-in-suit. *See* Patent L.R. 3-2(a)… Plaintiff does not argue that it could not have produced these documents sooner ***and, indeed, it should have***. Plaintiff cannot withhold these prior art documents for a year and a half into litigation and then argue, upon production, that it will be unduly prejudiced by their use. Any prejudice that is caused to Plaintiff by amending Defendants' invalidity contentions is not undue.
>
> Dkt. No. 167 (Report and Recommendation) at 13 (emphasis added), Dkt No. 176 (adopting Report and Recommendation "in every respect").

For "a year and a half," IPT withheld nearly all of its own prior art materials that it was required to produce early on in the case pursuant to this District's local rules (Patent L.R. 3-2(a)) as well as in response to Defendants' early prior art discovery requests.  IPT withheld this material while representing to both the Court and Defendants that it possessed no additional prior art. During this time period, in August and September 2018, Defendants' counsel deposed the inventors of the '841 Patent (including IPT's Fed. R. Civ. P. 30(b)(6) designee on the topic of its prior art sales).  It was not until November 9, 2018, after the original fact discovery deadline for this case, that IPT finally produced its prior art materials.

As a consequence of IPT's belated production, the schedule of this case was extended to allow for repeat depositions of the inventors.  *See* Dkt. No. 153.  The Court granted IPT's request that these depositions take place in California (because one of the witnesses who is not controlled by—but is a paid witness of—IPT resides in California), without prejudice to Defendants' right to seek costs and fees.  Defendants are hereby exercising that right and requesting discovery sanctions in the amount of $12,757.96 ($8,557.96 costs including court reporters, videographers,

1  room reservations, and travel costs, and $4,200.00 hourly attorney fees for the additional
2  depositions).  Had IPT produced its prior art materials when it was obligated to earlier in the case
3  (*as already recognized by this Court*, Dkt. No. 167 at 13), the repeat discovery and the
4  corresponding costs to Defendants would have been avoided.  Defendants should not have to bear
5  the cost of IPT's misconduct.

## II. SUMMARY OF RELEVANT LAW

Fed. R. Civ. P. 37(b)(2)(C) states that, if a party fails to obey an order to provide discovery, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Similarly, Fed. R. Civ. P. 37(c)(1) provides that if a party fails to timely supplement a discovery response in violation of Rule 26(e), the Court "may order payment of the reasonable expenses, including attorney's fees, caused by the failure" and "may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

## III. ARGUMENT

### A. Sanctions in the Form of Cost Relief are Mandated by IPT's Discovery Misconduct

#### i. <u>Cost Relief Sanctions are Mandated Under Fed. R. Civ. P. 37(b) Because IPT Disobeyed a Discovery Court Order</u>

Patent Local Rule 3-2(a) explicitly requires that, at the outset of its case, Plaintiff produce documents evidencing each disclosure or discussion of the claimed invention with a third party prior to the date of application for the patent-in-suit.  By this rule, IPT was obligated to produce the prior art materials that were the subject of Defendants' Motion for Leave to Amend their Invalidity Contentions (Dkt. No. 141) on July 13, 2017, *i.e.*, with its infringement contentions.  It did not. Kiblawi Decl. ¶2. Nor did IPT produce these materials when it amended its infringement contentions and Patent L.R. 3-2 disclosures in April of 2018.  *Id.* at ¶6.  Rather, IPT withheld this case-dispositive invalidity evidence until November 9, 2018 (months after the original close of fact discovery) in plain violation of this District's local rules, as recognized by the Court (Dkt. No. 167 at 13 (fully adopted by Dkt No. 176)). *Id.* at ¶18.

1      By withholding this prior art material, IPT failed to obey a discovery order from the Court
2  (Dkt. No. 58, ordering Plaintiff's Rule 3-2 document production on July 13, 2017).  As will be set
3  forth in Section III(B) below, IPT's failure was willful and unjustified.  Defendants therefore
4  respectfully submit that sanctions at least in the amount of Defendants' resultant expenses are
5  mandated by Fed. R. Civ. P. 37(b)(2)(C).

6              ii.    <u>Cost Relief Sanctions are Warranted Under Fed. R. Civ. P. 37(c) Because IPT Failed
7                     to Timely Supplement its Discovery Responses</u>

8      Fed. R. Civ. P. 26(e) requires a party to timely supplement its responses to discovery
9  requests, including requests for production.  In this Court's words, "Defendants first served
10 discovery requests on Plaintiff that were directed toward prior art as early as December 2017, yet
11 Plaintiff failed to produce documents relating to these products until nearly a year later."  Dkt. No.
12 167 at 7.  Instead, IPT responded in February 2018 to Defendants' document request (Production
13 Request No. 2) for prior art by affirmatively representing that it did not have any such materials.
14 Kiblawi Decl. ¶4, Ex. A; ¶5, Ex. B ("IPT refers Defendants to information that is publicly
15 available from the United States Patent and Trademark Office regarding the prosecution history of
16 the Patent-In-Suit and information cited therein. **IPT is not otherwise aware of any non-**
17 **privileged, non-cumulative, and relevant documents responsive to this Request**."); *see also*
18 Dkt. No. 167 at 8.  IPT never corrected its response to this production request and waited nine
19 months to finally produce its most relevant prior art materials, in November 2018, in violation of
20 Rule 26(e).  *Id.* at ¶18.

21     Meanwhile, the evidence shows that IPT was certainly aware of these prior art materials no
22 later than May 8, 2018, when it selectively produced some of them (but concealed the vast
23 majority) to mislead the Court as to the state of the art in its successful Opposition to Defendants'
24 earlier Motion for Summary Judgment on indefiniteness (Dkt. No. 90).  *Id.* at ¶¶7-9, Exs. D-E.
25 IPT admitted that, at that time, it was fully aware of the existence of prior art prints stored in the
26 same computer subdirectory folder, and that it searched this folder.  Kiblawi Decl. ¶20, Ex. L
27 (Schmidt Depo.) at 206-209 ("…certainly we would have looked in that directory, per our search
28 instructions.").  Defendants therefore respectfully submit that sanctions at least in the amount of

1  Defendants' resultant expenses are warranted by Fed. R. Civ. P. 37(c)(1)(A).

2              iii.    Defendants Incurred At Least $12,757.96 in Otherwise Unnecessary Expenses
3                      Resulting from IPT's Discovery Misconduct

4  As set forth above, cost relief sanctions at least in the amount of Defendants' expenses resulting from IPT's discovery misconduct are mandated by Fed. R. Civ. P. 37(b)(2)(C) and warranted by Fed. R. Civ. P. 37(c)(1)(A). In this regard, Defendants incurred at least $12,757.96 in expenses from the repeat depositions of IPT witnesses, which would have otherwise been unnecessary but for the belated production of prior art materials. Kiblawi Decl. ¶19. That is, had IPT produced these materials when it was obligated to by rule and by Court Order, Defendants would have cross-examined the relevant witnesses on these materials during their original depositions in August and September 2018. *Id.* Instead, Defendants were forced to incur at least $12,757.96 in additional expenses to take repeat depositions of these witnesses in January 2019, which would have otherwise been unnecessary but for IPT's discovery misconduct. *Id.*

Therefore, pursuant to Civil L.R. 37-4 and Fed. R. Civ. P. 37(b) and (c), Defendants respectfully request that the Court grant their request for attorney fees in the amount of $4,200 and other costs in the amount of $8,557.96 (total of $12,757.96), expenses that would have otherwise been avoided but for IPT's belated production of documents. *Id.*

**B. Additional Sanctions are Warranted by IPT's Willful Discovery Misconduct**

IPT had a Court-ordered obligation to produce its prior art materials on July 13, 2017 (and certainly no later than May 2018) in accordance with this District's local rules, but failed to do so. The evidence shows that this failure was willful and in line with a pattern of discovery misconduct by IPT. Defendants therefore respectfully request that the Court consider IPT's pattern of bad faith misconduct in its discretionary authority to impose additional sanctions pursuant to Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi).

              i.    IPT's Bad Faith Pattern of Misconduct Warrants Additional Sanctions

IPT has litigated its case with a stunning disregard for this Court's authority and rules. This is evident from IPT's misrepresentations to both the Court and Defendants as to the existence of case-dispositive prior art materials while withholding and concealing them. For example, in

February 2018, IPT responded to Defendants' document request (Production Request No. 2) for prior art by affirmatively representing that it did not have any such materials: "IPT refers Defendants to information that is publicly available from the United States Patent and Trademark Office regarding the prosecution history of the Patent-In-Suit and information cited therein. **IPT is not otherwise aware of any non-privileged, non-cumulative, and relevant documents responsive to this Request**." Kiblawi Decl. ¶5, Ex. B.  On July 3, 2018, IPT repeated this allegation, informing Defendants that it had "produced all non-privileged, non-cumulative, and relevant documents responsive to Production Request No. 2 of which it is currently aware." *Id.* at ¶11, Ex. G.  Further, on September 12, 2018 (one week before the scheduled close of fact discovery), IPT told the Court that its production of prior art materials is complete but for a few "lingering" and "irrelevant" documents that would be produced by September 20th: "Regarding Defendants' December 2017 document requests, **IPT has completed its search for responsive documents and productions**."  Dkt. No. 134.

IPT willfully made these misrepresentations fully aware that it had over 100 prior art technical prints in its possession but not yet produced.  These prints were all saved in a computer network subfolder that IPT admitted it searched as of May 2018.  Kiblawi Decl. Ex. L (Schmidt Depo.) at 206-209 ("…certainly we would have looked in that directory, per our search instructions.").  The facts indicate that IPT withheld this prior art not just to conceal case-dispositive evidence[1], but also to misdirect its technical expert's opinion and deliberately misinform the Court in its Opposition to Defendants' earlier Summary Judgment Motion of Invalidity (Dkt. No. 90) based on indefiniteness.  That is, IPT selectively provided its expert (Mr. Ronald Dennison) with only five prior art prints from among those it was withholding and concealing, and Mr. Dennison relied on these atypical prints to mischaracterize the state of the art to the Court in support of IPT's Opposition.  Kiblawi Decl. ¶¶7-9, 22, Ex. N (2019 Dennison Depo.) at 176-178.

Specifically, in the earlier Motion for Summary Judgment of Invalidity (Dkt. No. 90), Defendants argued that the asserted claims of U.S. Patent No. 6,183,841 are invalid because the

---

[1] The withheld prior art produced by IPT belatedly in November 2018 is the basis of multiple grounds of on-sale bar invalidity under 35 U.S.C. § 102(b) in Defendants' pending Motion for Summary Judgment (Dkt. No. 200).

1  claim term "low profile" as used with respect to HDD base plates had no fixed and definite
2  meaning, but was an indefinite term used in an ever-changing manner.  To survive this motion, IPT
3  relied on the May 2018 testimony of its expert, Mr. Ronald Dennison, who argued that a "low
4  profile" base plate has a definite meaning in the art with a fixed reference point of a one-inch low
5  profile HDD.  IPT specifically directed the Court to Mr. Dennison's testimony that "[t]he migration
6  from conventional base plates to low profile base plates was a step-function, not a gradual change,"
7  from 1.0 mm to 0.6 mm and nothing in between.  Dkt. No. 103, Dennison Decl. ¶27.

8        This was the underlying basis for Mr. Dennison's otherwise conclusory opinion that "low
9  profile" has a fixed and definite meaning with respect to base plates, in connection with one-inch
10 HDDs.  *Id.* at ¶24.  For example, in his May 10, 2018 deposition, Mr. Dennison testified that the
11 40% gap between conventional (1.0 mm) and low profile (0.6 mm) base plates is fundamentally tied
12 to the same 40% gap between conventional (1.6 inch) and low profile (1 inch) HDDs.  Kiblawi
13 Decl. ¶7, Ex. C (2018 Dennison Depo.) at 55-56.  Mr. Dennison concluded that there were no base
14 plates between 0.6 mm and 1.0 mm because he "didn't find anything in any of the examples that
15 were greater than about .6," which therefore proves the step function and fixed reference to the
16 decreased 1 inch HDD profile.  *Id.* at 33-34 ("Basically, low-profile baseplates are those intended
17 for low-profile hard drives, and as far as I'm aware, there – there wasn't anything around .7.  You
18 know, we took a step function jump from the – from the one-and-five-eighths to one inch [HDD],
19 and we had to scale everything down accordingly, and that's what happened."); *see also id.* at 25[2].

20       The problem, however, is that this testimony was a work of fiction engineered by IPT,
21 specifically IPT's selective production of five prior art prints (from among those it was improperly
22 withholding) showing a "gap" in profiles between 1.0 mm and 0.6 mm, while withholding and
23 concealing the remainder of its prints that disprove this premise.  That is, the majority of IPT's
24 withheld prior art prints have profiles between 1.0 mm and 0.6 mm, the very "fundamental" gap that
25 Mr. Dennison testified to as the basis for his otherwise conclusory opinion.  Kiblawi Decl. ¶9.  IPT

---

[2] "I haven't seen any examples of baseplates that fall much in this gap between 1 millimeter and .6 millimeter, which is about a 40 percent gap.  It -- it turns out that's the same gap there is between the Z-height of the half height drive and the one-inch drive, so it's quite understandable that there's really nothing in between."

also advanced this false narrative during oral argument as the specific basis for the one-inch HDD reference point. Specifically, IPT presented a scatter plot it had created that omitted prior art products that it was concealing to support this fictional "no-man's land" gap in profiles. Kiblawi Decl. ¶¶8, 9, Exs. D, E.

In his subsequent April 2019 deposition, Mr. Dennison admitted that his incorrect testimony was shaped by IPT, namely, IPT's withholding of its prior art prints, and that his opinion would have been different had IPT provided him with the withheld evidence. *Id.* at Ex. N (2019 Dennison Depo.) at 176-178. Mr. Dennison even went as far as reversing the very testimony that the Court ultimately relied on in denying Defendants' earlier Summary Judgment motion (Dkt. No. 123), stating that the term "low profile" has "evolved over time," in contrast to "what the judge decided":

> A. Yeah. You know, the industry moves pretty fast.
>
> Q. But not with the term "low profile," apparently.
>
> A. No, low profile -- low profile evolved over time. But, you know, yes. What was low profile in the nineties was not low profile in the 2000s. ***But, you know, that's my opinion. That's not what the judge decided.***
>
> 2019 Dennison Depo. at 168 (emphasis added).

Thus, IPT was aware of its prior art in its possession at least as of May 2018. The facts indicate that IPT knowingly withheld this prior art in bad faith not just to conceal case-dispositive evidence, but also to manipulate its expert's testimony and provide the Court with incorrect material facts in its adjudication of a case-dispositive issue. And this is not the only time that IPT has violated this Court's rules and withheld critical evidence to misshape its experts' testimony. For example, IPT also failed to produce a highly-relevant license under the patent until April 15, 2019, only four days before Defendants' rebuttal expert report on damages was due. Kiblawi Decl. ¶21, Ex. M.[3] IPT withheld this document from its own damages expert, thereby resulting in a damages calculation that is improperly inflated by over one-third. *Id.* By Patent L.R. 3-2(f), IPT was obligated to produce this license agreement with its infringement contentions, back on July 13,

---

[3] IPT previously produced, in January 2019 (over 18 months after it was obligated to by local rule and Court order), an earlier version of this license that did not cover the accused products. It was only after Defendants' counsel requested confirmation that no amendments to this license exist that IPT finally provided the relevant document.

DEFENDANTS' MOTION FOR SANCTIONS
Case No. 3:17-cv-01097-EMC (EDL)                                                              - 8 -

1   2017. This document should also have been produced in response to Defendants' December 2017
2   Production Request No. 6 requesting all documents related to any license involving the patent-in-
3   suit. *Id.* at 4. Instead, IPT waited until April 2019 (only four days before Defendants' rebuttal
4   expert report on damages was due) to produce this critical evidence, and only after Defendants by
5   chance made a blind request for it.
6       In sum, IPT knowingly withheld prior art materials that it was fully aware was in its
7   possession. In so doing, IPT concealed case-dispositive evidence until late into the case after
8   *Markman* and multiple court-ordered mediations, and deliberately misguided its expert's
9   testimony for purposes of surviving an early Summary Judgment proceeding. Thus, the facts
10  show that IPT's noncompliance with its discovery obligations was due to "willfulness, bad faith,
11  or fault," and therefore warrant consideration of additional discretionary sanctions. *See Sanchez v.*
12  *Rodriguez*, 298 F.R.D. 460, 463 (C.D. Cal. 2014) (in order to impose a sanction as severe as
13  dismissal, a court must first find that plaintiff's noncompliance was due to willfulness, bad faith, or
14  fault, which "does not require wrongful intent; rather, disobedient conduct not shown to be outside
15  the party's control is by itself sufficient to establish willfulness, bad faith, or fault" (internal
16  citations omitted)).

17      ii.    The *Malone* Factors Support a Grant of Additional Sanctions

18      Under Ninth Circuit precedent, a Court considers the following five factor test from
19  *Malone v. United States Postal Service*, 833 F.2d 128, 130 (9th Cir. 1987), in applying additional
20  sanctions as harsh as dismissal: "(1) the public's interest in expeditious resolution of litigation; (2)
21  the court's need to manage its docket; (3) the risk of prejudice to the [other party]; (4) the public
22  policy favoring disposition of cases on their merits; and (5) the availability of less drastic
23  sanctions." *United Constr. Prod., Inc. v. Tile Tech, Inc.*, 843 F.3d 1363, 1368 (Fed. Cir. 2016)
24  (internal quotation marks and citation omitted). Where there is a violation of a court order that
25  serves as the basis for the sanction (as is the case here), the first two factors support a terminating
26  sanction, whereas the fourth factor generally weights against such a sanction. *Sanchez*, 298
27  F.R.D. at 464-465.
28      As to the third factor (the risk of prejudice), "[f]ailing to produce documents as ordered is

1 considered sufficient prejudice as a matter of law." *Id.* at 465 (internal quotation marks and
2 citations omitted). In this case, Defendants have suffered actual prejudice, both in terms of the
3 additional costs resulting from the extension to this case's schedule, as well as the Court's earlier
4 order denying Summary Judgment on the basis of an expert (Mr. Dennison) who has recanted his
5 prior testimony in view of the withheld prior art.

6 Meanwhile, Defendants respectfully submit that less severe sanctions (fifth factor) would
7 not address IPT's demonstrated pattern of misconduct. In other words, while monetary sanctions
8 or reconsideration of Defendants' earlier Summary Judgment motion may alleviate some of the
9 prejudice suffered, Defendants remain concerned that there is other unknown prejudice, for
10 example, based on evidence that has been withheld in this case. Defendants submit that this
11 concern is valid and cannot be resolved by mere monetary sanctions. To this point, Defendants
12 note that IPT has litigated its case with a stunning disregard for this Court's authority and rules.
13 This is evident from IPT's misrepresentations to both the Court and Defendants as to the existence
14 of the prior art it was knowingly withholding, as discussed above.

15 This is also evident from IPT's attempts to surreptitiously pressure Defendants to
16 unknowingly consent to its withholding of case-dispositive evidence. Namely, five days after
17 misrepresenting to the Court, on September 12, 2018 (Dkt. No. 134), that its production of prior
18 art materials is complete but for a few "lingering" and "irrelevant" documents that would be
19 produced by September 20th, Kiblawi Decl. ¶14, IPT informed Defendants for the first time in this
20 case that it would not produce responsive prior art materials in its possession. *Id.* at ¶16, Ex. I. At
21 that time, IPT's counsel alleged that these materials were collected, analyzed, and deemed to be
22 irrelevant. *Id.* Notably, IPT would only agree to produce these materials if Defendants consented
23 to a cut-off date of 1995. *Id.* at ¶17, Ex. J. Only after Defendants threatened to seek relief from the
24 Court did IPT agree to produce its prior art, which it finally did on November 9, 2018. *Id.*
25 Among this prior art was a 1994 product that invalidates the patent even under IPT's claim
26 construction theories for dimensions recited in the asserted claims. Had Defendants agreed to
27 IPT's 1995 cut-off demand, this case-dispositive evidence would never have been produced.
28 Similarly, with respect to the license under the patent discussed above, if Defendants had

1  not issued a blind request for confirmation that IPT completed its production of licenses covered
2  by the patent-in-suit, this critical document would never have entered the case despite IPT's
3  Court-ordered obligation to produce it (Dkt. No. 58, ordering Plaintiff's Rule 3-2 document
4  production on July 13, 2017).

5  Given these incidents and IPT's demonstrated disregard for the rules, Defendants are
6  concerned that there are other pieces of critical evidence that have been withheld or other
7  prejudicial tactics employed.  Less severe sanctions cannot alleviate this valid concern.  Therefore,
8  Defendants respectfully request that the Court weigh these facts and apply its discretion to impose
9  additional sanctions (in addition to the cost relief set forth in Section III(A)) up to and including
10 dismissal under Fed. R. Civ. P. 37(b)(2)(A)(v).

## IV. CONCLUSION

In view of the above, Defendants respectfully request that, pursuant to Civil L.R. 37-4, Fed. R. Civ. P. 37(b)(2)(C) and Fed. R. Civ. P. 37(c)(1)(A), the Court grant their motion for sanctions of no less than $12,757.96 in repeat deposition expenses that were otherwise unnecessary but for the discovery misconduct of Plaintiff Intri-Plex Technologies, Inc. ("Plaintiff" or "IPT").  Further, in view of IPT's bad faith and willfulness with respect to its discovery misconduct, Defendants respectfully request that the Court exercise its discretion pursuant to Fed. R. Civ. P. 37(c)(1)(C) and impose additional sanctions as the Court deems appropriate.

DATED:  May 20, 2019                    Respectfully submitted,

                                   By:   */s/ William H. Mandir*

                                         Frank L. Bernstein (State Bar No. 189504)
                                         SQUIRE PATTON BOGGS LLP

                                         William H. Mandir (*Pro Hac Vice*)
                                         John F. Rabena (*Pro Hac Vice*)
                                         Yoshinari Kishimoto (*Pro Hac Vice*)
                                         Fadi Kiblawi (*Pro Hac Vice*)
                                         SUGHRUE MION, PLLC